**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Rodger Dale GRIGGS, Defendant–Appellant.**

**Nos. 94–1313, 94–1314.**

United States Court of Appeals, Sixth Circuit.

Argued Dec. 8, 1994.

Decided Feb. 24, 1995.

---

John F. Salan, Asst. U.S. Atty. (argued and briefed), Office of the U.S. Atty., Grand Rapids, MI, for plaintiff-appellee.

Jeffrey J. O'Hara (argued and briefed), Grand Rapids, MI, for defendant-appellant.

Before: KEITH, JONES, and MILBURN, Circuit Judges.

KEITH, Circuit Judge.

Defendant–Appellant, Rodger Dale Griggs ("Griggs") appeals his sentence rendered by the United States District Court for the Western District of Michigan, Southern Division. For the reasons stated below, we **AFFIRM.**

## I. Statement of the Case

Griggs was involved in a conspiracy to defraud the United States Department of Housing and Urban Development ("HUD") through conversion of the proceeds of property sales from HUD-owned properties. The major organizer of the conspiracy, Reba Louise Lovell ("Lovell"), embezzled $2,527,-369.65 by setting up a corporation to act as closing agent for the sale of HUD-owned housing and then using the funds for her own personal use, instead of wiring the funds to HUD. Griggs held himself out as a partner in a company, T.G. Industries, set up for the alleged purpose of buying and selling commercial paper. Lovell used Griggs's company to launder the money she took from HUD. She corresponded with and met with Griggs and arranged to launder the money through a fake non-repayable loan to a dummy corporation. Griggs wired money to Lovell over the course of the conspiracy. When Griggs became aware HUD investigators were suspicious of their actions, he faxed a blank document to Lovell and had it returned via Federal Express to help conceal the conspiracy.

On July 15, 1993, a grand jury returned a fourteen count indictment against Griggs and codefendant Thomas Gunter ("Gunter") in Case No. 1:93:CR:113. The grand jury returned a fourteen count superseding indict-

ment against the same two defendants on August 5, 1993 and a twelve count second superseding indictment against those defendants plus James Daniel Peace ("Peace") on October 13, 1993. The indictment charged Griggs with, *inter alia*, conspiracy to launder approximately $475,000 embezzled from HUD Real Estate Closings in the Dallas/Fort Worth, Texas area.[1] The conspiracy lasted from early July 1988 through the end of May 1989.

On July 15, 1993, the same grand jury also rendered a three count indictment against Griggs for filing false tax returns in Case No. 1:93:CR:112. On October 12, 1993, the grand jury returned a three count superseding indictment regarding the same charge against Griggs. The indictment specifically charged that Griggs failed to report income earned and falsely claimed various expenses on his tax returns from 1988 to 1990.

On December 9, 1993, Griggs pled guilty to Count Seven of Case No. 1:93:CR:113 and Count Two of Case No. 1:93:CR:112 pursuant to a plea agreement with the government. Count Seven charged Griggs with violating 18 U.S.C. §§ 2314 and 641 by knowingly and unlawfully causing stolen and embezzled funds worth $5,000 or more to be transported, transmitted and transferred in interstate commerce by wire. Count Two charged Griggs with knowingly and willfully making and subscribing a 1988 United States Individual Income Tax Return Form 1040 which was made under penalties of perjury and signed by the defendant. The indictment specified that Griggs failed to report income in excess of $26,700 and falsely claimed educational expenses of $1,876.

The presentence report calculated the sentence as follows. For Count Seven, the

transportation of stolen monies, the base offense level pursuant to U.S.S.G. § 2B1.1 was four for a violation of 18 U.S.C. § 2314. An eleven-level increase was warranted pursuant to U.S.S.G. § 2B1.1(b)(1)(L) because the offense involved the loss of more than $350,-000.00. An additional two-level increase was warranted for more than minimal planning under U.S.S.G. § 2B1.1(b)(5). Two levels were added for obstruction of justice pursuant to U.S.S.G. § 3C1.1. This resulted in an adjusted offense level of nineteen.

For Count Two, filing a false tax return, the applicable base offense level pursuant to U.S.S.G. § 2T1.1 for a violation of 26 U.S.C. § 7206(1) was nine since the understated taxable income exceeded $10,000.00. An increase by two levels was warranted pursuant to U.S.S.G. § 2T1.1(b)(1) because Griggs failed to correctly identify the source of income exceeding $10,000 from criminal activity. This resulted in an adjusted offense level of eleven.

The presentence report then calculated a multiple count adjustment pursuant to § 3D1.4. Counting the higher adjusted offense level for Count Seven (nineteen) as one unit and counting the lower adjusted level for Count Two (eleven) as one half unit because it is five to eight levels less serious, the presentence report increased the greater adjusted offense level by one level. *See* U.S.S.G. § 3D1.4. This resulted in a combined adjusted offense level of twenty. After a two level reduction for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1(a) the total offense level was eighteen.

On March 16, 1994, Judge David W. McKeague sentenced Griggs in a consolidated proceeding, rejecting the recommendation for a two-level enhancement for obstruction

---

1. Count One charged Griggs and his codefendants with engaging in monetary transactions in property from specified unlawful activity by causing $475,000 of embezzled funds from HUD real estate closings in the Dallas/Fort Worth, Texas area to be deposited into a bank in Kalamazoo, Michigan, in violation of 18 U.S.C. §§ 371 and 1957. Counts Two through Six charged Griggs and codefendants with knowingly and unlawfully engaging in a monetary transaction, effecting interstate commerce, in criminally derived property valued at greater than $10,000 in violation of 18 U.S.C. §§ 1957 and

641. Counts Seven through Eleven charged Griggs and codefendant with knowingly and unlawfully causing stolen and embezzled funds worth $5,000 or more to be transported, transmitted and transferred in interstate commerce by wire transfer in violation of 18 U.S.C. §§ 2314 and 641. Count Twelve charged Griggs with using a facility in interstate commerce, i.e. a telephone and Federal Express, to facilitate the promotion of an unlawful activity in violation of 18 U.S.C. § 1957, by faxing a document to Lovell which was sent via Federal Express back to him.

of justice. The district court arrived at a total offense level of fifteen after applying the multiple count adjustment, the two-level reduction for acceptance of responsibility and a U.S.S.G. § 5K1.1 motion for a downward departure of one point for substantial assistance. The sentence for both cases was twenty-one months imprisonment, $35,000 restitution and a $6,000 fine, with the sentences to run concurrently and the restitution and fine to be combined.

## II. Discussion

Griggs argues the district court erred in calculating his sentence by

1) adding two points for more than minimal planning pursuant to U.S.S.G. § 2B1.1(b)(5)(A);

2) applying the multiple count adjustment when the counts involved were from two separate indictments;

3) assessing a fine in the amount of $6,000.

### A. More Than Minimal Planning

■ Griggs argues the district court erred by assessing a two-level enhancement in his base offense level for more than minimal planning because his acts were solely in response to Lovell's orders and initiative. Griggs cites *United States v. Clark*, 957 F.2d 248 (6th Cir.1992), in which the defendant was convicted of theft of a vehicle and conversion with intent to steal a second vehicle. In *Clark* this court found more than minimal planning because the defendant asked an undercover agent several times to help him find a car to steal. Griggs argues that his case is distinguishable from the facts in *Clark* because Lovell, not Griggs, did the planning.

This court will affirm a district court's enhancement unless it is clearly erroneous. *United States v. Milligan*, 17 F.3d 177, 184–85 (6th Cir.) *cert. denied,* —— U.S. ——, 115 S.Ct. 211, 130 L.Ed.2d 140 (1994). " 'More than minimal planning' exists in situations involving: (1) more planning than is typical for commission of the offense in simple form; (2) significant affirmative steps ... taken to conceal the offense; or (3) repeated acts over a period of time, unless it is clear that each

instance was purely opportune." *Id.* (citations omitted).

Application note 1(f) states

In an embezzlement, a single taking accomplished by a false book entry would constitute only minimal planning. On the other hand, creating purchase orders to, and invoices from a dummy corporation for merchandise that was never delivered would constitute more than minimal planning, as would several instances of taking money, each accompanied by false entries.

U.S.S.G. § 1B1.1, comment. (n.1(f)). In the instant case, the government established by a preponderance of the evidence that Griggs transferred funds on several occasions and had multiple meetings with Peace and Lovell. After Griggs was contacted by the FBI investigators, Griggs contacted Lovell in order to camouflage his involvement in the conspiracy. Griggs both engaged in acts repeated over a period of time and took significant affirmative steps to conceal the offense. For those reasons, the district court's two-level enhancement for more than minimal planning was not clearly erroneous.

### B. Multiple Count Adjustment

■ Griggs argues U.S.S.G. § 3D1.4 does not apply to multiple counts from different indictments but only applies to multiple counts in a single indictment and thus the district court erred by applying a multiple count adjustment. Griggs's argument has not been previously considered by the Sixth Circuit and raises an interesting point. While Chapter Three, Part D of the Sentencing Guidelines provides several examples of the application of an adjustment to multiple counts of conviction, it does not address whether those multiple counts can come from separate indictments. Multiple counts arising from separate indictments are addressed, however, in the commentary to U.S.S.G. § 5G1.2 discussing "Sentencing on Multiple Counts of Conviction" which states

This section applies to multiple counts of conviction (1) contained in the same indictment or information, or (2) contained in different indictments or informations for which sentences are to be imposed at the same time or in a consolidated proceeding.

Although U.S.S.G. § 5G1.2 clearly applies to multiple counts for separate indictments, it is not technically applied until after the combined offense level is determined from Part D of Chapter Three. *See* U.S.S.G. § 1B1.1;[2] *see also* U.S.S.G. Chapter Three, Part D, Introductory Commentary ("This Part provides the rules for determining a single offense level that encompasses all the counts of which the defendant is convicted. The single, "combined" offense level that results from applying these rules is used, after adjustment pursuant to the guidelines in subsequent parts, to determine the sentence."). Griggs thus argues the adjustment for multiple counts of conviction in the calculation of the combined offense level is not authorized for counts in separate indictments under Chapter Three, Part D.

Even though Part D of Chapter Three contains no explicit language applying § 3D1.4 to multiple counts in separate indictments, the absence of such a statement is of no moment. First, there is no language in Part D of Chapter Three prohibiting the application of § 3D1.4 to counts in separate indictments. Second, U.S.S.G. § 3D1.5 states "[u]se the combined offense level to determine the appropriate sentence in accordance with the provisions of Chapter Five."

In order to apply a sentence to multiple counts in separate indictments pursuant to § 5G1.2, a combined offense level must first have been determined which incorporates the counts from the separate indictments. Thus, in order to make sense, § 3D1.4 must be read to apply to counts existing in separate indictments in which sentences are to be imposed at the same time or in a consolidated proceeding.

The First Circuit has commented, albeit briefly, on this quirk · in the Sentencing Guidelines. In *U.S. v. Hernandez Coplin*, 24 F.3d 312 (1st Cir.) *cert. denied*, —— U.S. ——, 115 S.Ct. 378, 130 L.Ed.2d 328 (1994), the defendant pled guilty to all counts of two separate indictments. Each of the two indictments concerned an event of smuggling aliens into the country. The district court found that during the earlier event, Hernandez forced people to jump off of the boat while brandishing a firearm. Two women who could not swim drowned after jumping off the boat.

Hernandez argued, *inter alia*, the district court erred in computing two separate guideline ranges for the two separate indictments. Judge Boudin articulated the position of the First Circuit panel which included former Chief Judge Stephen G. Breyer.[3] The *Hernandez* court held the district court correctly grouped the counts of each indictment separately, as the counts were not "closely related" as defined in U.S.S.G. § 3D1.2, but failed to apply U.S.S.G. § 3D1.4 to reach a total combined offense level for both indictments.

In reaching this conclusion the First Circuit recognized in its footnote six the point we aim to elucidate in the instant case:

> [F]ormally part 5G, containing § 5G1.2, does not itself come into play until the court has determined a guideline range, and then chosen a specific sentence within or (where a departure occurs) outside the

---

**2.** U.S.S.G. § 1B1.1 provides the application instructions for the sentencing guidelines. The first step is to determine the applicable offense guideline. Then the base offense level is determined including the application of any specific offense characteristics pursuant to Chapter Two. Then adjustments are made relating to victim, role and obstruction of justice pursuant to Parts A, B and C of Chapter Three. An adjustment for multiple counts of conviction is then made pursuant to Part D of Chapter Three. After the multiple count adjustment has been made, the court may determine any adjustment for acceptance of responsibility from Part E of Chapter Three; the defendant's criminal history category and any other applicable adjustments from Chapter Four; and the guideline range that corresponds to the offense level and criminal history

category from Part A of Chapter Five. Finally "the sentencing requirements and options relating to probation, imprisonment, supervision conditions, fines, and restitution" are determined from Parts B through G of Chapter Five. The application instructions also recommend consultation of the policy statements provided in Parts H and K of Chapter Five and other policy statements and commentary in the Guidelines.

**3.** Now Associate Justice Breyer was a major architect of the sentencing guidelines. *See* David Margolick, *Man in the News: The Supreme Court*, N. Y. Times, May 14, 1994, at 1; *see also* Stephen Breyer, *The Federal Sentencing Guidelines and the Key Compromises Upon Which They Rest*, 17 Hofstra L.Rev. 1 (1988).

range. Still, § 5G1.2 would not make much sense unless we also assumed that the grouping rules under chapter 3, part D had previously been applied to counts "contained in different indictments ... for which sentences are to be imposed at the same time." Accordingly, we read this concept into chapter 3, part D.

*Id.* at 318, n. 6. The only logical reading of U.S.S.G. §§ 3D1.1–5 and 5G1.2 requires that § 3D1.4 apply to multiple counts in separate indictments. Thus, the district court did not err in assessing a multiple count adjustment.

### C. Fine Assessment

■■■ Griggs argues the district court erred by assessing a fine despite his arguments he is currently indigent and cannot pay a fine. The court may impose a fine where the defendant has a future ability to pay. *United States v. Blanchard,* 9 F.3d 22, 25–26 (6th Cir.1993); *see* U.S.S.G. § 5E1.2(a). The district court in the instant case specifically ruled that although Griggs may not have resources today, he is owed substantial amounts of money and has investments in business equipment that make it likely he will become able to pay a fine in the future. The district court did not err in assessing a fine of $6,000 against Griggs.

### III. Conclusion

For the reasons stated above, we **AF-FIRM** the decision of the Honorable David W. McKeague, United States District Judge for the Western District of Michigan, Southern Division.