NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name:  05a0656n.06
Filed:  August 4, 2005

Nos. 03-6481/6482

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| PHILLIP LACEFIELD, | ) | WESTERN DISTRICT OF TENNESSEE |
| | ) | |
| Defendant-Appellant. | ) | |

Before: KEITH and DAUGHTREY, Circuit Judges, and WILLIAMS,[*] District Judge.

**MARTHA CRAIG DAUGHTREY, Circuit Judge.**  The defendant, Phillip Lacefield,

was charged in a 19-count indictment in February 2002 with money laundering, identity

theft, and making false statements to the IRS.  Then in May 2002, the grand jury returned

a second indictment against Lacefield, charging him with mail fraud, wire fraud, making

false statements on a loan application, and two counts of making false statements to his

pretrial services officer.  Lacefield went to trial on the allegations in the second indictment

and was found guilty on all five counts.  He then pleaded guilty to Counts 1-4 and Count

10 of the first indictment.  At sentencing, the district court combined the cases and

sentenced Lacefield to 108 months' incarceration and three years' supervised release.

---

[*]The Hon. Glen M. Williams, United States District Judge for the Western District of Virginia, sitting by designation.

Lacefield now appeals his sentence on three grounds. First, he alleges that Counts 4 and 5 of the second indictment are multiplicitous, in violation of Fifth Amendment's prohibition against double jeopardy. Secondly, Lacefield asserts that the district court committed clear error in imposing a four-point enhancement because the prosecution did not prove that the crime involved 50 or more victims. Finally, he argues that the district court's use of the 2002 version of the sentencing guidelines violated the Ex Post Facto Clause. We affirm the convictions but conclude that the case must be remanded for re-sentencing.

## FACTUAL AND PROCEDURAL HISTORY

The facts in this case are largely undisputed. In May 2000, Lacefield appropriated the identities of two individuals in order to embark on a complicated fraud scheme. Using the stolen identities, Lacefield obtained permission to sell leases for credit-card-transaction processing machines and printers for two companies, Leasecomm and CIT Group. Instead of properly leasing the products, however, Lacefield advertised a bogus "business opportunity" that purportedly allowed buyers to set up their own "internet malls," collect royalties from any sales they made, and sell the same package to other people for a $500.00 commission in what amounted to a pyramid scheme. As part of the package, the buyers were to receive a special internet phone, personal internet access, and the training and support necessary to establish an "internet mall" business. Each person signing up for the program executed a non-revokable lease agreement, and many of the victims signed blank agreements, unaware that the would be required to pay more than $100 a month for

four years.  Each victim was told to provide Lacefield with a copy of his or her driver's license and a voided check in order to facilitate direct deposit of their commissions.  As the defendant stated in his brief on appeal, "After getting the person's signature on the lease contract, the defendant provided equipment and left the scene."  Not one victim was ever able to properly access and establish an "internet mall," nor did anyone receive the promised training.

In return for brokering these transactions, Lacefield received commissions, under his adopted identities, from Leasecomm and CIT Group.  Between the two companies, Lacefield took in $446,236.00 in commissions and sold $876,576.00 worth of contracts.  At sentencing, the parties agreed that the Lacefield should be held responsible for a total loss to his victims of $876,576.00.  In all, 156 individuals were fraudulently induced to enter into the contracts.  Federal investigators attempted to contact each of the victims, but only approximately 50 responded.  Of these 50, all recounted similar descriptions of the fraud that had been perpetrated on them by the defendant.

Lacefield was initially indicted on 19 counts charging money laundering, pursuant to 18 U.S.C. § 1957; identity theft, pursuant to 18 U.S.C. § 1028(a)(7); and making false statements, pursuant to 18 U.S.C. § 1001.  The indictment also contained a forfeiture provision, pursuant to 18 U.S.C. § 982.  Lacefield was arrested and taken into custody immediately after the indictment was returned on February 27, 2002.  On March 5, 2002, the district court released Lacefield on bond and placed him on pretrial supervision. Under

the conditions of his release, Lacefield was required to refrain from further employment involving investments, to disclose all financial information including all bank statements and records, and to refrain from obtaining any further lines of credit unless approved by the pretrial services officer. Valerie Pugh, Lacefield's pretrial services officer, went over the conditions of release with Lacefield when she met with him on March 6. At that point, Lacefield told Pugh he was unemployed and showed her three rejection letters. During a previous interview, Lacefield had informed a different pretrial services officer that he had bank accounts at only one bank, Bancorp South. Pugh requested that Lacefield provide copies of all recent bank statements at his next report date. Although Lacefield knew the conditions of his release, at no point before March 22, 2002, did he inform any pretrial services officer that he had bank accounts at two separate banks, Bancorp South and First Tennessee, or that he was employed. As it turned out, Lacefield applied for a $140,000 home equity loan from First Tennessee Bank on approximately March 8, 2002. In his application, he stated that he was employed by Professional Business Services, Inc., earning $15,000 a month.

On May 28, 2002, Lacefield was indicted again, this time on one count of mail fraud, pursuant to 18 U.S.C. § 1341; one count of wire fraud, pursuant to 18 U.S.C. § 1343; one count of making false statements on a loan application, pursuant to 18 U.S.C. § 1014; and two counts of making false statements to a pretrial services officer, pursuant to 18 U.S.C. § 1001. Only the offenses charged in the last two counts are relevant to this appeal. They alleged that Lacefield twice responded to his pretrial services officer that he was not

employed and did not have any other bank accounts than those at Bancorp South. Those counts therefore alleged identical behavior, but occurring on different dates.

Lacefield pleaded not guilty to the charges in the second indictment, and the case went to trial, resulting in a jury verdict of guilty on all five counts. That same day, Lacefield pleaded guilty to Counts 1-4 and Count 10 of the first indictment. He also agreed to the forfeiture in Count 18. In exchange, the prosecution dismissed the rest of the charges against Lacefield from the first indictment.

The charges from the two indictments were covered in the same pre-sentence report, and the charges in each indictment were separately grouped for purposes of the sentencing recommendation. The convictions from the first indictment yielded an adjusted offense level of 31, while those from the second indictment yielded a level of only 20. Thus, the pre-sentence report suggested that Lacefield be sentenced according to an adjusted offense level of 31, which exposed him to 108 to 135 months of incarceration. Lacefield's sentence was calculated according to the 2002 version of the sentencing guidelines.

At the sentencing hearing, the defense argued that the court should use the 2000 version of the guidelines instead of the 2002 version, but the district court declined to agree, finding that, if the two indictments were to be sentenced together, § 1B1.11(b)(3) of the guidelines required that the most recent version of the guidelines be applied. Defense counsel also objected to the four-level enhancement given under U.S.S.G. 2B1.1(b)(2)(B) for a crime with 50 or more victims. Both parties agreed on a lower loss calculation than

that recommended by the pre-sentence report, so the total adjusted offense level came to 29. This offense level exposed Lacefield to a range of 87 to 108 months' incarceration. Noting that he "couldn't sleep if [Lacefield] didn't get the maximum penalty in this case," the district court sentenced the defendant to 108 months of incarceration, three years of supervised release, and restitution.

Lacefield now appeals his sentence on three grounds. The first of these grounds, that Count 4 and 5 of the second indictment were multiplicitous in violation of the Fifth Amendment prohibition against double jeopardy, was not raised at the trial court level. The other two grounds for appeals were preserved by proper objections below.

## **DISCUSSION**

### **1. Multiplicity**

Lacefield contends that the two counts in the second indictment that charged him with making material false statements to his pretrial services officer were multiplicitous and that his conviction on both amounts to double punishment for the same conduct, in violation of the constitutional protection against double jeopardy. Because Lacefield did not raise this issue in the district court, we review it for plain error.

Under plain error review, we may correct an error not raised below only if there is "(1) 'error,' (2) that is 'plain,' and (3) that 'affects substantial rights.'" *United States v. Cromer*, 389 F.3d 662, 672 (6th Cir. 2004) (quoting *United States v. Olano*, 507 U.S. 725,

732 (1993)). "If all three conditions are met, an appellate court may then exercise its discretion to notice a forfeited error, but only if (4) the error 'seriously affects the fairness, integrity, or public reputation of judicial proceedings.'" *Cromer*, 389 F.3d at 672 (quoting *Olano*, 507 U.S. at 732).

We conclude that the defendant's double jeopardy claim does not survive plain error review. Counts 4 and 5 of the second indictment charged Lacefield with making the same false statement to the same recipient, but on two separate dates. For this reason, they meet "[t]he general test for compliance with the double jeopardy clause [which] looks to whether each provision requires proof of a fact which the other does not." *United States v. Davis*, 306 F.3d 398, 417 (6th Cir. 2002) (quoting *Blockburger v. United States*, 284 U.S. 299, 304 (1932)). On the other hand, the defendant urges adoption of the Eighth Circuit's "unitary harm" rule, pursuant to which the "repetition of a false statement which does not constitute an additional impairment of governmental functions should not be charged separately in an indictment." *United States v. Graham*, 60 F.3d 463, 467 (8th Cir. 1995) (internal quotations omitted). Under this standard, sentencing based on convictions under both Count 4 and Count 5 would constitute a double jeopardy violation.

Unfortunately for the defendant, however, the Sixth Circuit has never adopted or relied upon a "unitary harm" rule, and whatever the value of such a principle, we think it cannot be applied in the context of plain error review. Given the lack of established

precedent in this circuit, we could hardly say that any error in sentencing in this case was "clear" or "obvious."

Furthermore, even if there were error in this regard, it neither affected Lacefield's "substantial rights" nor "seriously affect[ed] the fairness, integrity, or public reputation of judicial proceedings." *Cromer*, 389 F.3d at 672. Because the district court grouped the charges in each indictment together for sentencing purposes, neither Count 4 nor Count 5 contributed to the ultimate offense level under the sentencing guidelines. Thus, for practical purposes, Lacefield's sentence was not affected by either conviction. The only additional penalty Lacefield suffered as a result of Counts 4 and 5 was the special assessment fee imposed by the court for each count of the indictment.[1] Paying an extra $100.00 in court assessment fees, though it may be inconvenient, does not rise to the level of violating Lacefield's "substantial rights," especially when the $100.00 fee is compared to the $314,825.83 restitution imposed in Lacefield's case. Finally, even if it could be argued that the $100.00 fee implicated Lacefield's "substantial rights," the imposition of the fine does not "seriously affect[] the fairness, integrity, or public reputation of judicial

---

[1]Notably, the imposition of the assessment fee is what allows Lacefield even to bring this claim in the first place. Under the "concurrent sentencing doctrine," "an appellate court may decline to hear a substantive challenge to a conviction when the sentence on the challenged conviction is being served concurrently with an equal or longer sentence on a valid conviction." *United States v. Ware*, 282 F.3d 902, 906 (6th Cir. 2002) (quoting *Dale v. Hasberlin*, 878 F.2d 930, 935 n.3 (6th Cir. 1989)). Hence, we could have declined to review Lacefield's multiplicity claim except for the fact that "the concurrent sentencing doctrine is inapplicable where a defendant must pay an assessment on each count of conviction." *Ware*, 282 F.3d at 906.

proceedings." *Cromer*, 389 F.3d at 672. We therefore find no plain error in connection with the defendant's double jeopardy claim.

**2. Sentencing Enhancement**

Lacefield next asserts that the district court erred in applying a four-level enhancement, pursuant to U.S.S.G. § 2B1.1(b)(2)(A)(ii), for engaging in an offense involving 50 or more victims. The defendant's challenge in this regard was originally directed toward the sufficiency of the evidence to support the district court's finding that there were, in fact, as many as 50 victims in this case; he did not object to the fact that the determination was based on "judge-found" facts not charged in the indictment or found specifically by the jury. Nevertheless, while this case was pending on appeal, the Supreme Court issued its opinion in *United States v. Booker*, 543 U.S. ____, 125 S.Ct. 738, 756 (2005), holding that "[a]ny fact (other than a conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by the plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt." The Court also expressly stated that its decision in *Booker* is applicable "to all cases on direct review," *ibid.*, which includes Lacefield's.

Because the district court relied on facts not admitted by the defendant or found by the jury, under *Booker* and the cases in this circuit that have followed *Booker*, we must vacate the sentence in this case and remand it for re-sentencing. Moreover, when the case reaches the district court, under *Booker*, the sentencing guidelines must now be considered

discretionary rather than mandatory, as they were at the time of Lacefield's sentencing. *See id.* at 769.

## 3. Applicable Guidelines

Lacefield's third and final challenge on appeal involves the guidelines applicable to his sentencing. The district court used the 2002 version of the guidelines exclusively, and the defendant argues that this violated the Ex Post Facto Clause because the offenses charged in the first indictment occurred in 2000, while the offenses charged in the second indictment took place in 2002. As detailed above, the two indictments represented separate offenses and followed two different paths through the criminal justice system. Conviction on the second indictment came at the hands of a jury, while Lacefield pleaded guilty to the charges in the first one. Although the indictments were separate, a consolidated sentencing report was prepared all the charges, and Lacefield was sentenced on all convictions at the same time.

At the sentencing hearing, the prosecution and the defense disagreed on which version of the sentencing guidelines should be applied to which convictions. Lacefield's guideline range was considerably higher under the 2002 version than it would have been under the 2000 version because the base offense level under the 2000 guidelines was three points lower. *See* U.S. SENTENCING GUIDELINES MANUAL § 2F1.1 (2000), U.S. SENTENCING GUIDELINES MANUAL § 2B1.1 (2002). Additionally, the specific offense

characteristics varied as between the two versions, further increasing the disparity in the overall punishment that the defendant would receive under the different guidelines.

Determining the appropriate version of the guidelines is a matter of law that we review de novo. *See United States v. Campbell*, 309 F.3d 928, 930 (6th Cir. 2002). Generally, the district court must apply the version of the guidelines in place at the time of sentencing, but if the application of that version violates the Ex Post Facto Clause, U.S.S.G. § 1B1.11(b)(1) requires that the district court "shall use the Guidelines Manual in effect on the date that the offense of conviction was committed." *See United States v. Davis*, 397 F.3d 340, 346 (6th Cir. 2005). An ex post facto violation is implicated where the new guidelines version "changes the legal consequences of acts completed before its effective date." *Miller v. Florida*, 482 U.S. 423, 430 (1987) (internal quotations omitted). In short, this "court must not impose a sentence in excess of that allowed by the older guidelines." *United States v. Milton*, 27 F.3d 203, 210 (6th Cir. 1994).

In seeming contradiction with its guidance on the Ex Post Facto Clause, the Sentencing Guidelines Manual, in § 1B1.11(b)(3), requires that "[i]f the defendant is convicted of two offenses, the first committed before and the second after a revised edition of the Guidelines Manual became effective, the revised edition of the Guidelines Manual is to be applied to both offenses." In deciding to follow § 1B1.11(b)(3) and apply the 2002 version of the guidelines, the district court held that once two cases are considered

together, "they become part of a collective endeavor." Lacefield now argues that § 1B1.11(b)(3), at least as applied in this case, violates the Ex Post Facto Clause. We agree.

Although we have repeatedly held that the district court must apply the earlier version of the guidelines when the later version would result in harsher punishment, we have never had the occasion to apply § 1B1.11(b)(3) to circumstances similar to those in Lacefield's case. In *United States v. Cseplo*, 42 F.3d 360, 362 (6th Cir. 1994), for example, we reviewed the sentence imposed on a defendant who had engaged in relevant conduct prior to the adoption of a new, harsher, version of the guidelines and held that even if some of the conduct deemed relevant by the district court occurred prior to the issuance of the new manual, the defendant was not entitled to be sentenced under the earlier version. Notably, in *Cseplo*, the actual crimes for which the defendant were convicted did not occur until after the change in the guidelines.

Moreover, in this case – unlike those in which there is a single prosecution based on a single indictment charging multiple offenses that occurred both before and after a revision in the guidelines – Lacefield's convictions resulted from two separate indictments, one charging pre-revision offenses and the other post-revision offenses. Moreover, the two sets of charges were not consolidated but were processed at different times and in different manners. They were joined only for purposes of the assembling pre-sentencing report and were considered together at the sentencing hearing.

Hence, Lacefield's situation appears to be unique, not only in terms of Sixth Circuit case law but also in terms of reported cases from other circuits. Like ours, most of our sister circuits' decisions touching on the constitutionality of § 1B1.11(b)(3) deal with situations in which the offenses were charged in one indictment, prosecuted together, and grouped for sentencing. Indeed, it is the grouping of the convictions that appears to be most significant factor. As the Tenth Circuit recently explained, "[T]he central concern of the ex post facto clause is fair notice to a defendant that the punishment for a crime has been increased from what it was when the crime was committed. . . . [T]he grouping rules, enacted in 1987, provide warning to criminals that completing another criminal offense similar to one committed previously places them in peril of sentencing under a revised version of the Guidelines." *Sullivan*, 255 F.3d 1256,1262-63 (10th Cir. 2001) (internal quotations omitted).

By contrast, the offenses for which Lacefield was convicted were not indicted or prosecuted together, and the convictions from the two separate indictments were not grouped at sentencing. Indeed, the record suggests that not all of the offenses were similar enough to be formally grouped. The question, of course, is whether they were sufficiently similar for grouping purposes to provide Lacefield with adequate notice that the offenses committed in 2000 could be punished under a later set of guidelines. We think that the question must be answered in the negative and, therefore, that it was error to apply the 2002 guidelines to offenses otherwise covered by the 2000 Guidelines Manual. Because the sentence Lacefield received must be vacated in any event, and the case remanded for

re-sentencing, this error can be corrected by the district court at the new sentencing hearing.

## **CONCLUSION**

For the reasons set out above, we AFFIRM the district court's judgment of conviction, VACATE the defendant's sentence, and REMAND for re-sentencing in conformity with this opinion.