**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 07a0723n.06
Filed: October 9, 2007

**Nos. 06-5568 and 06-5569**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| PHILLIP LACEFIELD, | ) | COURT FOR THE WESTERN |
| | ) | DISTRICT OF TENNESSEE |
| Defendant-Appellant. | ) | |
| | ) | |
| _____ | ) | |

BEFORE: KEITH and GRIFFIN, Circuit Judges; and VAN TATENHOVE, District Judge.[*]

GRIFFIN, Circuit Judge.

Defendant Phillip Lacefield was prosecuted in two separate cases. The first case, Number 02-20051, involved offenses that Lacefield committed in 2000; he pleaded guilty to three counts of money laundering in violation of 18 U.S.C. § 1957 and two counts of identity theft in violation of 18 U.S.C. § 1028(a)(7). The second case, Number 02-20203, involved offenses that Lacefield committed in 2001-2002; a jury convicted him of all five counts, specifically mail fraud, wire fraud, making a false statement on a loan application, and two counts of making false statements to the IRS, in violation of 18 U.S.C. §§ 1341, 1343, 1014, and 1001, respectively. The United States Probation

---

[*]The Honorable Gregory F. Van Tatenhove, United States District Judge for the Eastern District of Kentucky, sitting by designation.

Office ("Probation") prepared one Pre-Sentence Report ("PSR") for both cases, but the district court

performed separate United States Sentencing Guidelines ("Guidelines") calculations and sentenced

Lacefield separately in each case. The total sentence was 108 months in prison.

On Lacefield's first appeal, we vacated his sentence, holding *inter alia* that the district court

violated the Ex Post Facto Clause by applying the 2002 version of the Guidelines to the first case

(which involved offenses committed only in 2000), rather than the 2000 version, which was more

lenient. On remand, the district court "grouped" offenses within each case, as required by the

Guidelines, but declined to group offenses from one case with offenses from the other case. The

district court imposed separate consecutive sentences for each case, at the top of each Guideline

range, for a total of 98 months.

Lacefield appeals from his resentencing, contending that the district court erred in three

respects: (1) it enhanced his sentence based on facts about relevant conduct that were found by the

court by a preponderance of the evidence, rather than by a jury beyond a reasonable doubt; (2) it

wrongly refused to group offenses from case one with similar offenses from case two; and (3) it

rendered an unreasonable sentence by failing to address his "converging range" argument and by

failing to adequately consider the inadequate medical care that the prison was providing.

For the reasons that follow, we affirm Lacefield's sentence.

I.

In May and July 2000, Phillip Lacefield appropriated two individuals' identities in order to

induce corporations to allow him to sell leases for credit card transaction processing machines and

printers. Instead of offering leases for the corporations' equipment as authorized, Lacefield used newspaper advertisements and in-person presentations to misrepresent that the contracts allowed people to participate in a business opportunity with substantial income potential. Lacefield convinced people to give him personal and checking account information by telling them that, in return, they would receive a telephone capable of accessing the internet, internet service, and the training needed to establish on-line "mall" businesses. Lacefield entered into approximately 156 contracts using these fraudulent representations.

About 50 of the 156 individuals who contracted with Lacefield responded to investigators' requests for information, and they uniformly reported that none of them were able to access the internet in the manner promised by Lacefield. These individuals also told investigators that Lacefield withdrew money from their checking accounts as payment for the equipment, and that he caused significant damage to their credit ratings. Two of the defrauded individuals testified at sentencing and corroborated the testimony of Special Agent Brian Burns on these points.

In addition to respective losses of the 156 individuals, the corporations suffered losses due to Lacefield's fraudulent scheme as well. Because the corporations mistakenly believed that the 156 individuals had contracted to lease their credit card equipment, they paid Lacefield a commission of $1,900 - $5,000 for each contract, for a total of more than $400,000 in commissions. The corporations never received lease payments from the individuals under the supposed leases, because the individuals repudiated the contracts when they learned of Lacefield's misrepresentations and the non-existence of the services promised.

From September 2001 through May 2002, Lacefield obtained or tried to obtain loans from four banks by providing false information about his employment, income, residency, and other material facts.

While on pretrial release on the identity-theft charges discussed above, Lacefield was required to visit the United States Probation and Pretrial Services Office each week and report his employment and income; in March 2002, he reported that he was unemployed, which conflicted with the information he provided on his applications to the four banks, where he stated that he was earning $14,000 per month.

The Probation and Pretrial Services Office prepared one PSR for both cases. Lacefield committed the criminal conduct in Case No. 02-20203 (fraudulent representation to obtain loans) in 2001-2002, and he committed the criminal conduct in Case No. 02-20051 (identity theft and fraudulent contracts) in 2000. The PSR used the 2002 Guidelines for both cases, even though Lacefield committed the offenses in the second case in 2000, when the applicable Guidelines were concededly more lenient.

After an original nineteen-count indictment in February 2002, a federal grand jury in the Western District of Tennessee issued an eighteen-count superseding indictment in September 2002, number 02-20051, charging Phillip Lacefield with three counts of engaging in monetary transactions in excess of $10,000 with property derived from a specified unlawful activity, in violation of 18 U.S.C. § 1957 (Counts 1-3); eleven counts of knowingly and unlawfully using a means of identification, in violation of 18 U.S.C. § 1028(a)(7) (Counts 4-15); two counts of making false

statements to the Internal Revenue Service, in violation of 18 U.S.C. § 100 (Counts 16 and 17); and one count of criminal forfeiture (Count 18). Lacefield pleaded guilty to five counts, and, in return, the government agreed to move to dismiss the other thirteen counts. The government made a motion to dismiss those thirteen counts as promised, which the district court granted.

In May 2002, a separate federal grand jury in the Western District of Tennessee issued a five-count indictment, number 02-20203, charging Lacefield with mail fraud in violation of 18 U.S.C. § 1341 (Count 1); wire fraud in violation of 18 U.S.C. § 1343 (Count 2); knowingly making a false statement to an FDIC-insured bank in violation of 18 U.S.C. § 1014 (Count 3); and two counts of knowingly making false statements to a pretrial services officer in violation of 18 U.S.C. § 1001 (Counts 4 and 5). Lacefield went to trial, and the jury convicted him on all five counts.

The Probation Office prepared a joint PSR for both cases. The PSR "grouped" the convictions within each indictment pursuant to U.S.S.G. § 3D1.2(c). In the identity theft case, No. 02-20051, Lacefield had a base offense level of six. The PSR recommended adding 16 levels because the loss exceeded $1 million, four levels because there were more than fifty victims, two levels because he used another person's identity, two levels because he obstructed justice, and one level because he committed money laundering. This yielded a total offense level of 31 in the identity theft case.

In the bank loan case, No. 02-20203, Lacefield had a base offense level of six. The PSR recommended adding 14 levels because the loss was greater than $400,000, yielding a total offense level of 20 for that case. The district court accepted the PSR's findings and calculations.

Pursuant to U.S.S.G. § 3D1.4, the district court applied the multiple-count adjustment. Group one consisted of the identity theft convictions, which carried an adjusted offense level of 31 and one "unit." Group two consisted of the fraudulent loan convictions, which carried an adjusted offense level of 20 and no "units." The court selected the Guideline range that applied to group one because that group had the higher adjusted offense level (31 instead of 20). Lacefield had no criminal history. For offense level 31 and zero criminal history points, the Guideline table yielded a suggested range of 108 to 135 months in prison.

In October 2003, the district court sentenced Lacefield to 108 months in prison, to be followed by three years of supervised release, as well as about $314,000 in restitution and a $100 special assessment.

Lacefield timely appealed to this court, raising three assignments of error. *United States v. Lacefield*, 146 F. App'x 15 (6th Cir. 2005) ("*Lacefield I*"). First, Lacefield argued that the district court committed error under *United States v. Booker*, 543 U.S. 220 (2005), by treating the Guidelines as if they were binding. *Lacefield I* at 20-21. Second, Lacefield contended that the district court violated the Ex Post Facto Clause by sentencing him under the 2002 Guidelines in both cases. Noting that he committed the crimes in the second case in 2000, when the Guidelines were more lenient on those offenses, Lacefield contended that the district court should have applied the 2000 Guidelines to those offenses instead of the later, harsher version of the Guidelines.[1] *Id.* at 21.

_____

[1]The panel rejected Lacefield's third assignment of error. Lacefield contended that counts four and five of the second indictment, making false statements to a pretrial services officer, were multiplicitous in violation of the Double Jeopardy Clause. Because Lacefield had not raised that

Holding that the district court committed a *Booker* error and violated the Ex Post Facto Clause by applying the harsher 2002 Guidelines to conduct that had occurred in 2000, the panel vacated Lacefield's sentence in August 2005 and remanded for resentencing. *Id.* at 21-22. Other than not applying the 2002 Guidelines to the 2000 conduct, the *Lacefield I* panel did not expressly state how the district court should rectify the Ex Post Facto violation. Specifically, it did not state whether the district court should (1) apply the 2002 Guidelines to the 2002 conduct (the identity theft case) and the more-lenient 2000 Guidelines to the 2000 conduct (the bank loan case), or (2) apply the 2000 Guidelines to both the 2000 conduct and the 2002 conduct.

On remand, the Probation Office prepared the third, fourth, fifth, and sixth addenda to the PSR; Lacefield submitted briefs in support of his resentencing positions, and the prosecution submitted briefs in support of its resentencing positions. The district court endeavored to correct both errors identified in *Lacefield I*: it treated the Guidelines as advisory, and it applied the more lenient 2000 Guidelines to the offenses committed in 2000 (the second case). The district court again applied the 2002 Guidelines to the offenses committed in 2002 (the first case), and Lacefield does not contest that decision.

---

claim before the district court, this court reviewed it only for plain error. *Lacefield I*, 146 F. App'x at 19. This court held that it was unclear whether imposing separate and additional punishment for each of the false statement counts would violate the Double Jeopardy Clause as interpreted by this circuit and, therefore, that any error was not "plain." *Id.* at 19-20. This court further held that, even if there were a Double Jeopardy violation, it did not affect Lacefield's substantial rights or seriously affect the fairness, integrity, or public reputation of the proceedings. *Id.* at 20.

In the identity theft case, No. 02-20051, the PSR determined a Guideline range of 57-71 months. In the bank loan case, No. 02-20203, the PSR determined a range of 33-41 months.

After a lengthy discussion, the district court decided that Lacefield should be sentenced separately for each of the two cases. In the identity theft case, No. 02-20051, the district court sentenced Lacefield to 57 months in prison, the bottom of the Guideline range. In the fraudulent loan case, No. 02-20203, the district court sentenced Lacefield to 41 months in prison, the top of the range, to run consecutively to the sentence in the first case. The total sentence was 98 months in prison, ten months less than Lacefield's original sentence.

## II.

It is a legal question whether *Booker* requires relevant conduct to be determined by a jury beyond a reasonable doubt before the district court can select the applicable advisory Guideline range. As such, we review the district court's disposition of this question de novo. *United States v. Howse*, 478 F.3d 729, 731 (6th Cir. 2007) ("this court 'reviews de novo the district court's legal interpretation of the Guidelines. . . .'") (citing *United States v. Settle*, 414 F.3d 629, 630 (6th Cir. 2005)).

The Guidelines endorse the use of the preponderance of the evidence standard when applying the Guidelines to the facts of a case. The commentary to U.S.S.G. § 6A1.3 states the Commission's position that "use of a preponderance of the evidence standard is appropriate to meet due process requirements and policy concerns in resolving disputes regarding applications of the guidelines to the facts of a case." Title 28 U.S.C. § 3553 directs us to follow the Guidelines commentary "in order

to, among other things, 'interpret the guideline or explain how it is to be applied.'" *United States v. Young*, 266 F.3d 468, 475 n.7 (6th Cir. 2001) (quoting U.S.S.G. § 1B1.7).[2] "'Failure to follow such commentary could constitute an incorrect application of the guidelines, subjecting the sentence to possible reversal on appeal.'" *Id.*[3]

Before *Booker*, this court likewise held that the requirements of due process were met at sentencing when a district court engaged in fact-finding using a preponderance standard. *See United States v. Mayle*, 334 F.3d 552, 556 (6th Cir. 2003).

After *Booker*, we noted that "the Supreme Court severed and excised 18 U.S.C. § 3553(b)(1), which required district courts to sentence defendants within the applicable Guidelines range," but recognized that the remainder of "[t]he [Sentencing Reform Act] functions independently." *United*

---

[2]No decision of our court has quoted U.S.S.G. § 1B1.7 for this proposition since *Young* in 2001. There is no reason, however, to believe that *Booker* or any other intervening decision has disturbed the rule that we must treat Guideline commentary as authoritative unless it conflicts with the Guideline, the Constitution, or a federal statute. On the contrary, as the Eighth Circuit points out, "Even though the guidelines are no longer mandatory, *Booker* requires federal courts to start the sentencing process by calculating a guideline sentence before considering other statutory factors. The commentary retains its value in that exercise, for its purpose is to interpret the guidelines and assist courts in their application." *United States v. Mooney*, 425 F.3d 1093, 1101 (8th Cir. 2005) (internal citations omitted), *cert. denied*, – U.S. –, 126 S. Ct. 2889 (2006). Indeed, other circuits properly continue to treat the Guidelines commentary as authoritative. *See, e.g., United States v. Roush*, 466 F.3d 380, 387 (5th Cir. 2006); *United States v. Dyer*, 464 F.3d 741, 743 (7th Cir. 2006); *United States v. Staten*, 466 F.3d 708, 715 (9th Cir. 2006).

[3]Of course, "the commentary may not be followed if it violates 'the Constitution or a federal statute, or is inconsistent with, or a plainly erroneous reading of,' the guideline to which it applies." *Young*, 266 F.3d at 475 n.7 (quoting *Stinson v. United States*, 508 U.S. 36, 38 (1993)).

*States v. Milan*, 398 F.3d 445, 455-56 (6th Cir. 2005) (quoting *Booker*, 543 U.S. at 223 (internal

citations omitted)). After *Milan*, this court squarely held,

> In *United States v. Coffee*, 434 F.3d 887 [(6th Cir.), *cert. denied*, – U.S. –, 126 S. Ct. 2313 (2006)], we stated that judicial fact-finding for sentencing purposes must continue as it was conducted prior to *Booker*, under a preponderance of the evidence standard. *Id.* at 897-98; *see also United States v. Green*, 181 F. App'x 506, [508] (6th Cir. 2006) (explaining that "this court has consistently turned aside constitutional challenges to sentences premised on preponderance of the evidence judicial fact-finding").

> * * *

> In *Milan*, we considered the defendant's Sixth Amendment challenge to his sentence, but the rationale underpinning its holding is equally applicable to [a] Fifth Amendment challenge. Therefore, we find that judicial fact-finding in sentencing proceedings using a preponderance of the evidence standard post-*Booker* does not violate either Fifth Amendment due process rights, or the Sixth Amendment right to trial by jury.

*United States v. Gates*, 461 F.3d 703, 708 (6th Cir.), *cert. denied*, – U.S. –, 127 S. Ct. 602 (2006);

*see also United States v. Jones*, 489 F.3d 243, 250 (6th Cir 2007) (citing *Gates*).

As we have previously noted, "this court and others have repeatedly held since *Booker* that

district judges can find the facts necessary to calculate the appropriate Guidelines range using the

same preponderance of the evidence standard that governed prior to *Booker*." *United States v.*

*Ferguson*, 456 F.3d 660, 665 (6th Cir. 2006) (citing, *inter alia*, *United States v. Stone*, 432 F.3d 651,

654-55 (6th Cir. 2005), *cert. denied*, – U.S. –, 127 S. Ct. 129 (2006)).

Lacefield makes no attempt to show why his constitutional / *Booker* challenge to his sentence

is not squarely governed by *Gates*. Instead, he states, "*although following the Sixth Circuit*

*precedent* holding that it is not a Sixth Amendment violation to rely on judicial fact-finding to

compute the advisory guideline imprisonment range, such decisions conflict with *United States v. Booker . . . .*" This argument is ultimately unavailing. Because *Gates* is a published decision, we are obligated to follow it, *see United States v. Clinton*, 338 F.3d 483, 489 (6th Cir. 2003) and 6 CIR. R. 206(c), and we hold that the district court did not violate Lacefield's Fifth or Sixth Amendment rights by enhancing his sentence based on facts that the district court found by a preponderance of the evidence.

III.

The district court's legal interpretation of the Sentencing Guidelines is reviewed de novo. *United States v. Williams*, 411 F.3d 675, 677 (6th Cir. 2005) (citation omitted); *Weinberger v. United States*, 268 F.3d 346, 351 (6th Cir. 2001) ("The district court's decision to refuse to group offenses pursuant to U.S.S.G. § 3D1.2 is a legal determination that is reviewed de novo.") (citation omitted).

Guideline § 3D1.1(a) sets forth an overview of how district courts must determine offense level when the defendant is convicted of multiple offenses:

> (1) Group the counts resulting in conviction into distinct Groups of Close Related Counts ("Groups") by applying the rules specified in § 3D1.2.
>
> (2) Determine the offense level applicable to each Group by applying the rules specified in § 3D1.3.
>
> (3) Determine the combined offense level applicable to all Groups taken together by applying the rules specified in § 3D1.4.
>
> In turn, U.S.S.G. § 3D1.2 explains how to determine whether counts are "closely related":
>
> All counts involving substantially the same harm shall be grouped together into a single Group. Counts involve substantially the same harm within the meaning of this rule:

> (a)     When counts involve the same victim and the same act or transaction.
>
> (b)     When counts involve the same victim and two or more acts or transactions connected by a common criminal objective or constituting part of a common scheme or plan.
>
> (c)     When one of the counts embodies conduct that is treated as a specific offense characteristic in, or other adjustment to, the guideline applicable to another of the counts.
>
> (d)     When the offense level is determined largely on the basis of the total amount of harm or loss . . . or if the offense behavior is ongoing or continuous in nature and the offense guideline is written to cover such behavior.

A Group may consist of a single count; conversely, under appropriate circumstances, all counts may comprise a single Group.  U.S.S.G. § 3D1.2, cmt. n.7.

Lacefield contends that the money laundering and identity theft offenses in case one, committed against individuals and credit card equipment companies in 2000, must be grouped with the mail fraud, wire fraud, and false statement offenses in case two, committed against banks in 2002.  Thus, the first question is whether the district court correctly applied U.S.S.G. § 3D1.2 to determine which offenses are sufficiently related to be grouped, i.e., which offenses "involve[d] substantially the same harm."  We conclude that it did.

The district court's decision not to group case one's offenses with case two's offenses was consistent with the standard laid out in U.S.S.G. § 3D1.2.  The case one offenses involved entirely different victims than the case two offenses:  in case one, the victims were the individuals whose identities Lacefield stole, and the two credit card equipment companies that paid him commissions based on non-existent equipment leases, while in case two the victims were the four banks to whom

Lacefield knowingly made false statements in an attempt to secure loans. Thus, the case one and case two offenses are not "closely related" under U.S.S.G. § 3D1.2(a) (same victim, same act or transaction) or § 3D1.2(b) (same victim, multiple acts or transactions that are part of a common scheme or served a common objective).

Next, none of the case one offenses embodies conduct that is treated as a specific offense characteristic of, or some other adjustment to, any of the case two offenses. Specifically, the essential conduct needed for money laundering and identity theft are not the same offense characteristics of mail fraud, wire fraud, making a false statement on a loan application, or making false statements to the IRS. Therefore, the case one offenses are not "closely related" to the case two offenses under the criterion set forth in U.S.S.G. § 3D1.2(c).

Nor are Lacefield's case one offenses "closely related" to his case two offenses under the standard set forth in U.S.S.G. § 3D1.2(d): "[w]hen the offense level is determined largely on the basis of the total amount of harm or loss . . . or if the offense behavior is ongoing or continuous in nature and the offense guideline is written to cover such behavior." Application Note 6 provides that counts involving offenses to which different Guidelines apply are grouped together under subsection (d) if the offenses are of the same general type and otherwise meet the criteria for grouping under this subsection. Lacefield's money laundering and identity theft in case one did not contribute to the same harm or loss as the mail fraud, wire fraud, false statements on loan applications, and false statements to the IRS that he committed in case two.

In addition to this review of § 3D1.2's definition of "closely related" offenses, the district

court's explanation of its determination that the case one offenses are not closely related to the case

two offenses for grouping purposes is cogent and persuasive:

> [T]here was a connection between the conduct in case number one – and that is
> 20051, and case number two, 20203 – and that conduct was Mr. Lacefield's false
> statements. His false statements to his probation officer [in the first case, where he
> told the probation officer that he was unemployed, which contradicted his
> representation on bank loan applications that he was earning at least $14,000 per
> month, which misrepresentation led to his indictment in the second case for
> knowingly making a false statement on the loan application and using the mail and
> wires to transmit that application].
>
> In saying that, that is not to say that the conduct is not otherwise distinct. *There is
> no necessary connection between the illegal transactions in which Mr. Lacefield
> engaged when he was running his fraud on the [credit card] computers and the
> illegal conduct in which he was engaged when he was undertaking the mail and wire
> fraud, and the false statements on his credit applications in the second case.* So
> there is no necessary connection there, but it seemed to be that the connection
> justified a joint sentence.
>
> * * *
>
> I don't think there is a collective endeavor here. . . . [T]he Court of Appeals, in
> discussing the matter [in *Lacefield I*], observed that they were separate prosecutions,
> separate indictments, separate offenses. The cases were not consolidated. They were
> processed at different times and in different manners. They were joined only for
> purposes of assembling a Presentencing Report. They were considered together at
> sentencing.
>
> * * *
>
> And the Court [of Appeals] says that the record suggests that not all of the offenses
> were similar enough to be formally grouped.
>
> * * *

-14-

> And the conduct is separate. The first conduct is one criminal scheme. The defendant was released, lied to his probation officer, which is the connection between the two cases. And while he was on release, engaged in the second criminal scheme, which is otherwise unrelated to the first scheme.

(Emphasis added.)

Thus far, we have discussed Lacefield's challenge to the district court's decision not to group offenses from case one with offenses from case two under U.S.S.G. § 3D1.2. He also challenges the district court's determination of the combined offense level applicable to all groups taken together, *see* U.S.S.G. § 3D1.1(a)(3) and § 3D1.4. Lacefield asserts that "[a]lthough the circumstances [in *United States v. Griggs*, 47 F.3d 827, 832 (6th Cir. 1995)] were slightly different, this Court held that the 'only logical reading of U.S.S.G. §§ 3D1.1-5 and 5G1.2 requires that § 3D1.4 apply to multiple counts in separate indictments.'"

But Lacefield's reliance on *Griggs* is simply misplaced. *Griggs* does not address the issue in dispute here. Rather, *Griggs* solely addressed whether the multiple-count adjustment applies only to counts within a single indictment, or also potentially to counts in multiple indictments. *Griggs* stands for the general legal proposition that grouping is not precluded by the fact that closely related offenses are charged in separate indictments. Nothing in *Griggs* suggests that *offenses of the types involved in Lacefield's cases* should be considered closely related so as to be grouped, either as a general conceptual matter or on facts similar to those here.[4]

---

[4]This court has not yet cited *Griggs* with regard to the grouping issue. Three of our sister circuits have cited *Griggs*'s holding regarding the grouping of offenses from different indictments, however, and none of them interprets *Griggs* in the manner urged by Lacefield. They hold only that, *under appropriate circumstances*, offenses from one indictment may be required to be grouped with

The defendant in *Griggs* was charged with various conspiracy counts relating to money laundering and embezzlement; he was later separately indicted for filing false tax returns that covered the very income and time period at issue in the first case, and the second indictment, accordingly, expressly referred to the first. *Griggs*, 47 F.3d at 828-29. The relation between the substance of the offenses was further reflected, and recognized by both parties, by a joint plea agreement that called for the defendant to plead guilty to one count from each indictment. The PSR in *Griggs* initially did separate calculations for each case, but it then applied the multiple count adjustment to arrive at a combined offense level for the group. *Id.* at 829-30. For the reasons expressed by the district court and elaborated on above, the offenses in Lacefield's first case are not closely related to the offenses in his second case, and *Griggs* does nothing to alter that conclusion.

IV.

Lacefield argues that his sentence was procedurally unreasonable because the district court erred in refusing to group case one with case two offenses and apply a multiple count adjustment accordingly at sentencing. As discussed above, there was no error in the district court's grouping decision, so Lacefield's sentence cannot be rendered procedurally unreasonable on this basis.

Lacefield also contends that his sentence is unreasonable because the district court imposed enhancements based on facts found by the court by a preponderance of the evidence, rather than

---

offenses from another indictment. *See United States v. Greer*, 91 F.3d 996 (7th Cir. 1996); *United States v. Kellum*, 372 F.3d 1141, 1144-46, *supplemented o.g.*, 119 F. App'x 32 (9th Cir. 2004); *United States v. Herula*, 464 F.3d 1132, 1136-37 (10th Cir. 2006).

admitted by him or found by a jury beyond a reasonable doubt. As discussed above, the district court did not commit error on that score, so Lacefield's sentence cannot be unreasonable on that basis.

Lacefield also asserts that his sentence is procedurally unreasonable because the district court failed to give adequate consideration to his argument that the Bureau of Prisons ("BOP") was not providing him with adequate medical care, a factor that the court must consider under 18 U.S.C. § 3553(a)(2)(D). This argument lacks merit. At resentencing, Lacefield testified that the BOP was not giving him the same cholesterol medication he had before his incarceration, Zocor. On cross-examination, however, Lacefield admitted that the BOP was providing treatment for his high cholesterol level, complaining merely that the treatment was not as effective as the pre-incarceration Zocor treatment. Moreover, Lacefield never filed a reply brief to contest the government's statement that medical records introduced during cross-examination showed that his bad cholesterol level declined while he was in the BOP's custody and that he had sometimes refused treatment for that condition. The district court did consider Lacefield's need for treatment of his cholesterol, for it stated on the record that while incarceration had some deleterious effect on Lacefield's health, it was at worst unpleasant, not life threatening.

Finally, Lacefield argues that his sentence is procedurally unreasonable because the district court did not address on the record his "converging guideline range" argument. The term "converging guideline range" does not appear in any known federal court decision, published or unpublished, and Lacefield presents no authority for his unique theory that it is error not to impose a sentence that is within the area where applicable Guideline ranges overlap. Our opinions that

mention the overlap between Guideline ranges say nothing to support such a novel proposition. In *United States v. Johnson*, 467 F.3d 559 (6th Cir. 2006), for example, the district judge noted, "There's an overlap between the one that was previously calculated, 27 to 33 months, and the new one, 30 to 37 months, so . . . I'm going to overlap those and give you a sentence that would be appropriate under either range." *Id.* at 562. Far from holding that the district court was somehow required to sentence within the overlap of the two ranges, this court held that the sentence in that case was unreasonable for unrelated reasons, specifically, because the district court failed to state that it considered any of the statutory sentencing factors other than the Guidelines range. *See id.* at 563-66. Elsewhere, we have stated the proposition, irrelevant to Lacefield's argument here, that "a sentence is appealable if the appealing party alleges that the sentencing guidelines have been incorrectly applied, even in cases where the guideline ranges advocated by each of the parties overlap." *United States v. Lavoie*, 19 F.3d 1102, 1104 (6th Cir. 1994).

Likewise, when other federal courts mention the overlap of Guideline ranges, they do so for reasons unrelated to Lacefield's argument. For example, at least two sister circuits hold that a sentence falling within the area of overlap between a correct and incorrect Guideline range is unreviewable if the district court, at the time of sentencing, states unequivocally that it would impose the same sentence with or without the challenged calculation [i.e., under either Guideline range]." *United States v. Martinez-Jimenez*, 464 F.3d 1205, 1209 (10th Cir. 2006) (quoting *Alaniz v. United States*, 351 F.3d 365, 368 (8th Cir. 2003)); *cf. United States v. Johnson*, 196 F. App'x 211, 213 (4th Cir. 2006) ("There may be situations where an error in calculating the appropriate guidelines range

is harmless, and therefore, does not require immediate remand[,] [such as] where the resulting sentence lies in the overlap between the correct and incorrect guidelines ranges.") (quoting *United States v. Mashek*, 406 F.3d 1012, 1017 (8th Cir. 2005)), *cert. denied*, – U.S. –, 127 S. Ct. 1927 (2007); *Clark v. United States*, No. 93-5622, 7 F.3d 232, 1993 WL 413441, at *2 (6th Cir. Oct. 15, 1993) ("The disputed increase to Clark's offense level should have been based on the amount of loss that the bank actually suffered. The ultimate effect of this recalculation would be to reduce Clark's sentencing range from 33-41 months to 30-37 months. The sentence that Clark received falls within either range. Thus, his allegations regarding prejudice are speculative at best . . . .") (internal citations omitted).

In short, the district court considered not only Lacefield's medical condition but also "the guidelines and the unique circumstances of his case." Further, Lacefield received a more lenient sentence than the first one imposed because the district court recognized his "progress as a prisoner" since the time of the first sentencing. This sentence was not more harsh than necessary to achieve the goals of the Sentencing Reform Act and Guidelines. Accordingly, Lacefield has not met his burden of showing that the sentence was unreasonable merely by pointing out that the sentence imposed was not within the area where the advisory Guideline ranges overlapped.

Finally, a sentence within the applicable Guidelines range is accorded a rebuttable presumption of *substantive* reasonableness, *United States v. Crowell*, 493 F.3d 744, 751 (6th Cir. 2007) (citing *Rita v. United States*, 551 U.S. –, 127 S. Ct. 2456, 2462-63 (2007)), and Lacefield has not rebutted that presumption.

V.

For the foregoing reasons, we affirm Lacefield's sentence.