*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 06a0286p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

No. 05-3998

*v.*

SCOTT A. FERGUSON,

*Defendant-Appellant.*

>

Appeal from the United States District Court
for the Southern District of Ohio at Dayton.
No. 03-00019—Walter H. Rice, District Judge.

Submitted: June 2, 2006

Decided and Filed: August 9, 2006

Before: GILMAN and GRIFFIN, Circuit Judges; DUGGAN, District Judge.[*]

_____

## COUNSEL

**ON BRIEF:** Lawrence J. Greger, Dayton, Ohio, for Appellant. Benjamin C. Glassman, ASSISTANT UNITED STATES ATTORNEY, Cincinnati, Ohio, Dwight Keller, ASSISTANT UNITED STATES ATTORNEY, Dayton, Ohio, for Appellee.

_____

## OPINION

_____

RONALD LEE GILMAN, Circuit Judge. Scott A. Ferguson appeals the sentence imposed by the district court after he entered a plea of no contest to charges that he transported a stolen motor vehicle in interstate commerce and later sold the vehicle after it had crossed state lines. The district court calculated the Sentencing Guidelines range to be 0 to 6 months, but actually sentenced Ferguson to 12 months in prison, followed by 3 years of supervised release. It also ordered him to pay $29,000 in restitution.

Ferguson argues on appeal that the district court erred by (1) basing his sentence on judicially found facts, (2) improperly considering his socio-economic status in determining an appropriate sentence, (3) failing to consider and discuss all of the factors listed in 18 U.S.C. § 3553(a), and (4) imposing a sentence that was twice as long as the high end of the Sentencing

_____

[*] The Honorable Patrick J. Duggan, Senior United States District Judge for the Eastern District of Michigan, sitting by designation.

Guidelines range.  We reject each of these challenges, and **AFFIRM** the sentence imposed by the district court.

## I.  BACKGROUND

### A.       Factual background

Ferguson began his employment at the United States Air Force Museum (now called the National Museum of the United States Air Force) in June of 1988.  He became the Registrar in 1992 and the Chief of Collections in 1995.  In the latter post, Ferguson assumed responsibility for the process of acquiring, storing, and disposing of historic property and artifacts.  Under this process, items acquired by the museum are assigned "accession" numbers, and items removed from the museum's collection are assigned "deaccession" numbers.  Audits revealed, however, that the system of assigning accession and deaccession numbers was not always followed during Ferguson's tenure as Chief of Collections.

After historic engine molds requested by a private collector turned up missing, the Air Force Office of Special Investigations launched an inquiry into World War I and World War II era items that Ferguson had deaccessioned.  Investigators learned in the course of these inquiries that a two-door Cadillac Gage "Peacekeeper" armored vehicle was missing.  The Peacekeeper, a pickup truck covered with armor and mounted with a machine gun, was at one time used to guard missile silos. *See* The Peacekeepers Have Arrived!, http://www.nps.gov/mimi/pphtml/newsdetail6424.html (last visited July 24, 2006).  Ferguson first saw the Peacekeeper on a visit to an Air Force Base in Plattsburg, New York in August of 1994.  He then lobbied for the vehicle to be transferred to the Air Force Museum in Ohio.

In the summer of 1996, Ferguson prepared a series of fraudulent documents that purportedly removed the Peacekeeper from the museum's books and accounted for the vehicle's absence.  The documents indicated that the Peacekeeper had been transferred to "Major Stevens" at the National Air Intelligence Center (NAIC), another organization on the Air Force Base, for use in a restricted project.  Air Force officials did not discover that the vehicle was missing until March of 2001, when they learned that the NAIC had not requested the Peacekeeper and that no official named Major Stevens had been assigned to the NAIC during the summer of 1996.

Instead of delivering the Peacekeeper to the NAIC, Ferguson had moved it to a warehouse in Middletown, Ohio that belonged to the father of his friend Alan Wise.  Ferguson then applied for a title and registration for the vehicle in Ohio, providing state officials with a fake bill of sale that listed the purchase price as $400.  First in 1997 and then again in 1998, Ferguson transported the Peacekeeper from Ohio to conventions hosted by the Military Preservation Association.  Those conventions took place in Memphis, Tennessee and Tobyhanna, Pennsylvania, respectively. Ferguson later sold the vehicle to Alan Wise for $18,000 in June of 1999.  After performing repairs and some engine work, Wise sold the Peacekeeper to the Eastern Band of Cherokee Indians for $38,000 in May of 2000.

### B.       Procedural background

A grand jury in the Southern District of Ohio returned a two-count indictment that charged Ferguson with (1) transporting in interstate commerce a motor vehicle that he knew was stolen, in violation of 18 U.S.C. § 2312; and (2) selling a motor vehicle that he knew was stolen and that had crossed state lines after the theft, in violation of 18 U.S.C. § 2313.  After Ferguson entered a plea of no contest, the district court found him guilty on both counts.  The Presentence Report (PSR) calculated the Sentencing Guidelines range at 15-21 months. Starting with a base offense level of 4, the PSR recommended that Ferguson be denied credit for acceptance of responsibility, and that

sentencing enhancements be added for an abuse of a position of trust and for causing a loss of more than $20,000 but less than $40,000. Ferguson objected to various aspects of the PSR.

A series of sentencing hearings were conducted by the district court. At the first hearing, the government introduced testimony from current and former museum employees familiar with the operations of the museum and the responsibilities of its personnel. Other witnesses included an Air Force investigator and Ferguson's friend Alan Wise. The district court also heard argument from Ferguson's counsel regarding the effect of the Supreme Court's then-recent decision in *United States v. Booker*, 543 U.S. 220 (2005). Over Ferguson's objections, the court ruled that it could engage in factfinding by a preponderance of the evidence as it had done prior to *Booker*.

At the final sentencing hearing, counsel for Ferguson attempted to persuade the district court that "a sentence restricting the defendant's freedom on house arrest, with or without electronic monitoring," adequately "reflects the seriousness of the offense, it promotes respect for the law, and provides just punishment." Counsel observed that a sentence of probation, with no jail time, was not prohibited by statute and that the Guidelines were no longer mandatory. After Ferguson addressed the court briefly, the district court began its analysis, noting at the outset that its task was "to impose a sentence sufficient, but not greater than necessary to comply with the purposes of sentencing set forth in 18 U.S.C. § 3553(a)." The court then read aloud the factors listed in § 3553(a) and reiterated its understanding that, after *Booker*, the court was entitled to make findings of fact so long as those findings did not result in a sentence above the statutory maximum of ten years.

In explaining its sentencing decision, the district court began with the Guidelines calculation. Specifically, the court sustained Ferguson's objection to the recommended enhancement for abuse of a position of trust. *See* U.S. Sentencing Guidelines Manual § 3B1.3 (1998). Such an enhancement, the court ruled, could be based *only* on the conduct for which Ferguson had been convicted, and not on other "relevant conduct" as defined by § 1B1.3 of the Guidelines. (We note in passing that the district court was wrong to sustain Ferguson's objection on this point, since this court held in *United States v. Young*, 266 F.3d 468, 479 (6th Cir. 2001), that the § 3B1.3 enhancement could indeed be based on relevant conduct.) After calculating the amount of loss caused by Ferguson's offenses, the district court also agreed to credit Ferguson with a two-level reduction for acceptance of responsibility. These calculations resulted in a total offense level of 8, which yielded a Guidelines range of 0-6 months.

The district court then proceeded seriatim through most of the factors contained in 18 U.S.C. § 3553(a). Of the remaining factors that it identified, the court essentially found that all but two weighed against a lengthy term of imprisonment. The court noted that the crimes of conviction were nonviolent, that Ferguson posed no threat to public safety, and that the ordeal of conviction had already rehabilitated Ferguson. Nor, in the court's view, would any sentence imposed create an unwarranted disparity among federal defendants because no other person had been convicted of the offenses in question under similar circumstances.

Cutting in the other direction, however, were the § 3553(a) provisions instructing courts to impose a sentence that promotes respect for the law and that provides adequate deterrence. The district court explained that Ferguson had taken advantage of his position at the museum to acquire a vehicle that "while not on everyone's wish list, is a national treasure." "A sentence imposed on this defendant," the court continued, "who has achieved much in his profession, will . . . have a serious deterrent effect on others similarly situated who might be inclined to abuse a position of trust . . . to steal and dispose of an item that is, for better or worse, irreplaceable." The court then emphasized that a lenient sentence based on Ferguson's background would not promote respect for the law because it would "simply tend to set in concrete the public perception that the higher you are, the less you have to fear from the law; and that if a person can afford it, the system, such as it

is, can be beaten." On the heals of these comments, the court sentenced Ferguson to 12 months in prison and 3 years of supervised release, and ordered him to pay $29,000 in restitution. This timely appeal followed.

## II.  ANALYSIS

### A.      Standard of review

We will not overturn a sentence imposed by a district court unless that sentence is unreasonable. *United States v. Richardson*, 437 F.3d 550, 553 (6th Cir. 2006). Reasonableness review has "both substantive and procedural components." *United States v. Jones*, 445 F.3d 865, 869 (6th Cir. 2006). A sentence may be procedurally unreasonable if "the district judge fails to 'consider' the applicable Guidelines range or neglects to 'consider' the other factors listed in 18 U.S.C. § 3553(a), and instead simply selects what the judge deems an appropriate sentence without such required consideration." *United States v. Webb*, 403 F.3d 373, 383 (6th Cir. 2005); *see also United States v. McBride*, 434 F.3d 470, 476 n.3 (6th Cir. 2006) (noting that "[a] district court's failure to explicitly consider the section 3553(a) factors without other evidence in the record demonstrating that they were thoroughly considered . . . would result in a procedurally unreasonable" sentence).

On the other hand, a sentence may substantively unreasonable where the district court "select[s] the sentence arbitrarily, bas[es] the sentence on impermissible factors, fail[s] to consider pertinent § 3553(a) factors, or giv[es] an unreasonable amount of weight to any pertinent factor." *Webb*, 403 F.3d at 385; *see also United States v. Moreland*, 437 F.3d 424, 434 (4th Cir. 2006) ("A sentence may be substantively unreasonable if the court relies on an improper factor or rejects policies articulated by Congress or the Sentencing Commission."); *accord United States v. Rattoballi*, 452 F.3d 127, 134 (2nd Cir. 2006) ("A non-Guidelines sentence that a district court imposes in reliance on factors incompatible with the Commission's policy statements may be deemed substantively unreasonable in the absence of persuasive explanation as to why the sentence actually comports with the § 3553(a) factors.").

Although sentences within the Guidelines range are afforded a presumption of reasonableness, *United States v. Williams*, 436 F.3d 706, 708 (6th Cir. 2006), sentences falling outside the Guidelines range are neither presumptively reasonable nor presumptively unreasonable. *United States v. Foreman*, 436 F.3d 638, 644 (6th Cir. 2006) (explaining that sentences outside the Guidelines range, although not entitled to a presumption of reasonableness, are not "presumptively *un*reasonable" either) (emphasis in original). Regardless of whether the sentence imposed is inside or outside of the Guidelines range, the district court "must articulate the reasons for the particular sentence imposed in order to enable this [c]ourt to engage in a meaningful reasonableness review of the sentence." *Jones*, 445 F.3d at 869. These reasons include an acknowledgment on the record of the defendant's arguments for a lower sentence and an explanation of the court's reasons for rejecting those arguments. *See Richardson*, 437 F.3d at 554. The district court's overall task remains that of imposing "'a sentence sufficient, but not greater than necessary, to comply with the purposes' of section 3553(a)(2)." *Foreman*, 436 F.3d at 644 n.1 (quoting 18 U.S.C. § 3553(a)).

### B.      The district court engaged in permissible judicial factfinding and did not impermissibly consider Ferguson's socio-economic status

Two of Ferguson's arguments—that the district court engaged in unauthorized judicial factfinding when it determined the amount of loss caused by his crimes and that it impermissibly considered his socio-economic status—can be summarily rejected. As to the first argument, this court and others have repeatedly held since *Booker* that district judges can find the facts necessary to calculate the appropriate Guidelines range using the same preponderance-of-the-evidence

standard that governed prior to *Booker*. *See United States v. Stone*, 432 F.3d 651, 654-55 (6th Cir. 2005) (holding that "*Booker* did not eliminate judicial fact-finding," and that district courts must "calculate the Guideline range as they would have done prior to *Booker*, but then sentence defendants by taking into account all of the relevant factors of 18 U.S.C. § 3553, as well as the Guidelines range"); *see also United States v. Bah*, 439 F.3d 423, 426 n.1 (8th Cir. 2006) ("[J]udicial fact-finding using a preponderance of the evidence standard is permitted provided that the guidelines are applied in an advisory manner.").

The district court in the present case properly conducted extensive hearings and relied on the PSR to determine the facts used in calculating the Guidelines range. Under this court's post-*Booker* caselaw, the district court acted within its authority in calculating the amount of loss.

Ferguson's contention that the district court impermissibly based its sentence on his socio-economic status likewise lacks merit. He maintains that the district court's statements during the sentencing hearing contravened the policy statement found at U.S. Sentencing Guidelines Manual § 5H1.10, which bars the court from using socio-economic status, along with factors like race and religion, as a basis for a sentencing determination. But as this court explained in *United States v. Holz*, 118 F. App'x 928, 935 (6th Cir. 2004) (unpublished), "[t]he prohibition against consideration of socio-economic status simply precludes a district court from determining that a defendant's prominence, or lack thereof, weighs in favor of, or against, a departure."

Citing the Supreme Court's decision in *Williams v. United States*, 503 U.S. 193, 201 (1992), for the proposition that where "a policy statement prohibits a district court from taking a specified action, the statement is an authoritative guide to the meaning of the applicable Guideline," Ferguson maintains that "the articulated basis for the [district] court's sentence is directly contrary to the policy statement" found in § 5H1.10. Ferguson specifically objects to the following statement made by the district court during the final sentencing hearing:

> [T]he failure to consider persons similarly situated to this defendant and the deterrent effect upon them of any sentence imposed today will not promote respect for the law. It will simply tend to set in concrete the public perception that the higher you are, the less you have to fear from the law; and that if a person can afford it, the system, such as it is, can be beaten.

District courts are still obliged to consider the Commission's policy statements after *Booker*. *See Jones*, 445 F.3d at 869 (noting that 18 U.S.C § 3553(a)(5) "requires the district court to consider any relevant policy statements in determining the sentence to be imposed"); *see also Moreland*, 437 F.3d at 432 (explaining that the "remaining provisions of the Sentencing Reform Act require the district court to consider the guideline range applicable to the defendant and pertinent policy statements of the Sentencing Commission"). But we agree with the government that the district court's statement, when taken in context, does not indicate that the court impermissibly considered Ferguson's socio-economic status. To the contrary, the court reasoned that granting Ferguson's request for no jail time on the basis of his educational and employment history and his standing in the community would lead to precisely the type of disrespect for the law that the Commission sought to avoid when it adopted § 5H1.10. Nothing in the district court's sentencing explanation demonstrates that Ferguson's "prominence, or lack thereof, weigh[ed] in favor" of or against a longer term of imprisonment. *See Holz*, 118 F. App'x at 935. We therefore reject this argument.

## C.    Ferguson's sentence is reasonable

The primary challenge lodged by Ferguson is that his 12-month prison sentence, which is twice the maximum of the Guidelines range calculated by the district court, is unreasonable. In

considering this challenge, we note that this court recently issued its first published opinions sustaining a district court's imposition of a post-*Booker* sentence that varied upward from the advisory Guidelines range. *See United States v. Barton*, — F.3d —, 2006 WL 2164260 (6th Cir. Aug. 3, 2006) (upholding as reasonable a sentence 43 months above the Guidelines maximum); *United States v. Matheny*, 450 F.3d 633 (6th Cir. 2006) (upholding as reasonable a sentence 6 months above the Guidelines maximum); *see also United States v. Hampton*, 441 F.3d 284, 287 (4th Cir. 2006) (differentiating between "variances" from the Guidelines range and traditional "departures" made pursuant to Guidelines provisions).

In *Matheny*, the district court calculated an advisory Guidelines range of 24 to 30 months, but imposed a sentence of 36 months on the ground that the Guidelines range "severely" underestimated the seriousness of the defendant's criminal history. 450 F.3d at 637. Although expressing some doubt as to whether the district court had chosen to impose a traditional upward departure under the Guidelines as opposed to a post-*Booker* variance, *see id.* at 640 n.4, this court nonetheless upheld the sentence as reasonable. The *Matheny* court noted that the concern over Matheny's criminal history expressed by the district court aligned with the § 3553(a) factors and was borne out by the record. Furthermore, the district judge had considered Matheny's need for rehabilitation and family ties, even recommending that he be incarcerated at a prison close to his home if that facility had a drug treatment program. *Id.* at 641. These reasons, this court ruled, sufficed to justify the higher sentence. *Id.*

Similarly, the district court in the present case justified a sentence six months above the high end of the Guidelines range with specific reference to the factors enumerated in § 3553(a). The district court acknowledged that some of the statutory factors favored leniency, but ultimately concluded that two others—the need for the sentence "to promote respect for the law" and the need for the sentence "to afford adequate deterrence to criminal conduct," § 3553(a)(2)(A), (B)—supported a sentence above the Guidelines range that the court had calculated.

With respect to these two factors, the court expressed its view that a sentence with significant jail time would "have a serious deterrent effect on others similarly situated who might be inclined to abuse a position of trust and as a result to steal and dispose of an item that is, for better or worse, irreplaceable." This analysis also demonstrates that the district court was not thinking in the abstract, but was instead focused on the particular "nature and circumstances of the offense," another factor enumerated in § 3553(a). Nothing in the court's nuanced application of the § 3553(a) factors to Ferguson's case indicates that the court gave "an unreasonable amount of weight to any pertinent factor." *Webb*, 403 F.3d at 385. In sum, the sentence was substantively reasonable.

The sentence was also procedurally reasonable. In explaining its sentencing decision, the district court presciently complied with the requirement that this court would later articulate in *Richardson*—namely, it provided reasons for rejecting Ferguson's plea for no jail time. *See* 437 F.3d at 554 ("Where a defendant raises a particular argument in seeking a lower sentence, the record must reflect both that the district judge considered the defendant's argument and that the judge explained the basis for rejecting it."). The court discussed on the record both why it believed that a term of imprisonment was appropriate and why it would disregard letters from museum and Air Force officials that asked the court to impose an even higher sentence. This direct explanation assured that Ferguson could "understand the basis for the particular sentence" imposed, and also allowed this court to "intelligently determine whether the specific sentence is indeed reasonable." *See id.*

The 12-month sentence imposed upon Ferguson, in short, was both procedurally and substantively reasonable. Although Ferguson disagrees with the manner in which the district court weighed the statutory factors, the record amply demonstrates that the court evaluated all of those

factors, entertained a forceful argument for leniency, and balanced the relevant considerations in light of Congress's command that the sentence imposed be "sufficient, but not greater than necessary, to comply with the purposes" articulated in § 3553(a)(2). Indeed, the district court twice quoted this so-called "parsimony provision," which this court has highlighted as the guidepost for sentencing decisions post-*Booker*. *See Foreman*, 436 F.3d at 644 n.1; *see also United States v. Buchanan*, 449 F.3d 731, 740 (6th Cir. 2006) (Sutton, J., concurring).

The district court therefore did what it was obligated to do by both this court's caselaw and the governing statute—it followed a congressional command and then "exercis[ed] independent judgment in sentencing [a] criminal defendant[] within statutory limits." *See id.*; Douglas A. Berman, *Reasoning Through Reasonableness*, 115 Yale L.J. Pocket Part 142 (2006), http://www.thepocketpart.org /2006/07/berman.html (reading *Booker* as requiring "district courts to exercise independent reasoned judgment when imposing a sentence"). Under these circumstances, we cannot say that the court's decision to impose a sentence six months above the advisory Guidelines range was unreasonable.

Finally, we return to a point mentioned briefly above. The government, as an alternative ground for affirmance, argues that Ferguson's sentence "does not need any unusual justification" because it falls within what the Guidelines range would have been had the district court not mistakenly believed that it could not impose an enhancement for abuse of a position of trust. *See* U.S. Sentencing Guidelines Manual § 3B1.3 (1998); *United States v. Young*, 266 F.3d 468, 479 (6th Cir. 2001). Because we hold that the sentence is reasonable even if viewed as an upward variance, we have no need to address this alternative argument or to decide generally whether a sentence that inadvertently ends up within the properly calculated Guidelines range is entitled to a presumption of reasonableness.

### III. CONCLUSION

For all of the reasons set forth above, we **AFFIRM** the sentence imposed by the district court.