NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 07a0349n.06
Filed: May 18, 2007

No. 05-4654

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee | ) | |
| | ) | ON APPEAL FROM THE |
| v. | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE NORTHERN |
| PETER ZAKY, | ) | DISTRICT OF OHIO |
| | ) | |
| | ) | |
| Defendant-Appellant | ) | |

**BEFORE: SUHRHEINRICH and GIBBONS, Circuit Judges, and HEYBURN, Chief District Judge***

JOHN G. HEYBURN II, Chief District Judge. This case presents the question of whether a district court's sentence was "reasonable," where the district court varied upward from the advisory Sentencing Guidelines range of twelve to eighteen months imprisonment to a sentence of thirty months. We find that the sentence is reasonable, and therefore AFFIRM the district court's decision.

I.

Appellant Peter Zaky is a native of Egypt and emigrated to the United States in 1973. He is married and has two children. Zaky owned and operated a dry cleaning business in northeast Ohio. Starting in January 2000, Zaky engaged in a course of conduct with Fanous and Sanaa Mikhail which

---

* The Honorable John G. Heyburn II, United States Chief District Judge for the Western District of Kentucky, sitting by designation.

eventually resulted in his indictment on federal charges on March 30, 2005. Fanous and Sanaa Mikhail are husband and wife; Sanaa Mikhail is Zaky's cousin. Zaky induced the Mikhails to give him about $115,000 over a period of several years, telling them it was an investment in an apartment building in Ohio. There was no such investment. The indictment charged Zaky with five counts of wire fraud, in violation of 18 U.S.C. § 1343; two counts of mail fraud, in violation of 18 U.S.C. § 1341; one count of misuse of treasury name, in violation of 18 U.S.C. § 333; and one count of false statements, in violation of 18 U.S.C. § 1001.

Zaky was arraigned on these charges on April 14, 2005 and pled not guilty. He was released on bond but failed to appear at several status conferences. The district court continued the trial several times. Defense counsel eventually advised the district court that Zaky had been hospitalized due to a self-inflicted gunshot wound. The United States then moved to revoke Zaky's bond.

On July 29, 2005, Zaky accepted a Plea Agreement. He pled guilty on August 2, 2005. As set forth in the Plea Agreement, the parties agreed that the base level offense was seven, pursuant to U.S.S.G. § 2B1.1(a)(1), and that the loss was more than $70,000, which added eight levels pursuant to U.S.S.G. § 2B1.1(b)(1)(E). The parties also agreed that there should be a two-level reduction for acceptance of responsibility. Because Zaky had a Criminal History Level I, the resulting advisory Sentencing Guidelines range was twelve to eighteen months.

Three sentencing hearings were held. The first hearing was held on October 24, 2005. The district court announced its calculation of the total offense level of thirteen and announced its intention to sentence Zaky within the Guidelines range.

The Court heard testimony from Fanous Mikhail and Rebecca Wahl. Mikhail said that Zaky "ruined my life." According to Wahl, Zaky defrauded her of $6,000. In her testimony at the sentencing hearing, Wahl called Zaky a "truly despicable person" and expressed her wish that Zaky be prosecuted to the fullest extent of the law. The Court also heard testimony from Doha Elghaffar. Elghaffar had known Zaky for thirteen years at the time of the sentencing hearing and their families were quite close. She testified as to how Zaky defrauded her of over $40,000.

At the conclusion of the evidence, the United States requested that Zaky be sentenced at the high end of the Guidelines range. The United States indicated that federal charges regarding Zaky's interactions with Wahl and Elghaffar were possible. The Court said that it would not allow restitution for uncharged crimes, and the Court also expressed concern that Zaky may have been concealing some of the monies obtained from the victims who testified. The Court continued the sentencing to allow more time to investigate Zaky's possible concealment of assets. The Court also stated that based on the testimony it had heard that day, it reserved "the right to vary my sentence higher than the advisory guideline range."

A second sentencing hearing was held December 6, 2005. The Court indicated again that it was considering an upward variance from the advisory guidelines. The United States suggested that the two point reduction for acceptance of responsibility be revoked because of Zaky's perceived lack of cooperation with the investigation into his assets. Some evidence was presented to the Court that Zaky might be concealing assets in Cairo, Egypt. The probation officer indicated that the information he had uncovered – including documents provided by Zaky's family – suggested that

Zaky "does have funds that he did not disclose during the course of the investigation." The Court ultimately continued the sentencing again to allow Zaky and his counsel to examine those documents.

A third and final sentencing hearing was held December 15, 2005. Zaky's counsel indicated that Zaky did not deny that he had received $6,000 from Wahl, but that he had planned to pay it back. The Court stated that it would vary upward four levels from the original total offense level to thirteen to a new total offense level of seventeen. The latter level resulted in a sentence of twenty-four to thirty months under the Guidelines. The Court indicated that it was varying upward "considering the factors under [18 U.S.C. §] 3553" because the conduct of Zaky was "reprehensible." The Court stated that it was "amazed that the guidelines call for as limited a sentence as they do where there is a system of taking money from persons over protracted periods of time in huge amounts and in fact driving that family into poverty, to me, that is reprehensible and that's the primary basis for my decision to vary upward." The Court then sentenced Zaky to thirty months imprisonment.

The Court subsequently issued a Memorandum Opinion dated December 19, 2005, detailing the Court's rationale for the sentence. The Court identified five factors under 18 U.S.C. § 3553(a) as justification for the upward variance.[1] First, the Court extensively reviewed the nature and

---

[1] 18 U.S.C. § 3553(a) reads – in pertinent part – as follows:

Factors to be considered in imposing a sentence.-The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider-

circumstances of the offense and Zaky's history and characteristics. The Court clearly understood the events leading to Zaky's guilty plea regarding his fraud upon the Mikhails. The Court also recited in detail the multiple messages Zaky sent to the Mikhails as part of his fraudulent scheme. Second, the Court found that under 18 U.S.C. § 3553(a)(2)(A), the guidelines range of twelve to eighteen months was "patently insufficient to reflect the seriousness of the defendant's reprehensible conduct over a protracted period of time during which he played, without any sense of remorse, on the natural sympathies of his victims." Third, the Court found that an eighteen month sentence was insufficient to afford adequate deterrence to criminal conduct.

Fourth, the Court found that, because of Zaky's unwillingness to be forthcoming in accounting for the money he gained by fraud and because Zaky had engaged in a similar course of action with "another victim" (presumably Wahl), the evidence suggested that Zaky "may engage in [similar] conduct in the future." Therefore, the Court concluded that a longer sentence was necessary to protect the public from further crimes committed by Zaky. Fifth and finally, the Court found that incarceration could provide Zaky with needed medical care to address his physical and mental health.

## II.

"[C]ourts of appeal review sentencing decisions for unreasonableness." *United States v. Booker*, 543 U.S. 220, 264 (2005). This Court will not overturn a sentence imposed by a district court unless that sentence is unreasonable. *United States v. Ferguson*, 456 F.3d 660, 664 (6th Cir. 2006) (citing *United States v. Richardson*, 437 F.3d 550, 553 (6th Cir. 2006)). Reasonableness review has "both substantive and procedural components." *United States v. Jones*, 445 F.3d 865,

869 (6th Cir. 2006). "A sentence may be procedurally unreasonable if the district judge fails to consider the applicable Guidelines range or neglects to consider the other factors listed in 18 U.S.C. § 3553(a), and instead simply selects what the judge deems an appropriate sentence without such required consideration." *Ferguson*, 456 F.3d at 664 (citing *United States v. Webb*, 403 F.3d 373, 383 (6th Cir. 2005)) (internal quotations omitted). A sentence may be substantively unreasonable if the district court selects an arbitrary sentence, uses impermissible factors in deciding the sentence, fails to consider pertinent § 3553(a) factors, or gives unreasonable weight to any particular factor. *United States v. Webb*, 403 F.3d 373, 385 (6th Cir. 2005). A district court need not recite the § 3553(a) factors but must articulate its reasoning in pronouncing a sentence in order to allow for reasonable appellate review. *United States v. Kirby*, 418 F.3d 621, 626 (6th Cir. 2005).

Sentences within the advisory Sentencing Guidelines range are entitled to a presumption of reasonableness. *United States v. Williams*, 436 F.3d 706, 708 (6th Cir. 2006). However, sentences *outside* of the Guidelines range are neither presumptively reasonable nor presumptively unreasonable. *United States v. Foreman*, 436 F.3d 638, 644 (6th Cir. 2006). In the post-*Booker* sentencing regime, district courts have the option, after calculating the Guideline range, to sentence a defendant *outside* the Guidelines range. *United States v. Williams*, 411 F.3d 675, 678 (6th Cir. 2005). District courts are "not bound to adhere to the Guideline range." *Foreman*, 436 F.3d at 643.

In this case, the district court reviewed the factors under § 3553(a), explicitly discussed the relevant factors in a Memorandum Opinion, and considered all of the relevant factors, a procedure that this Court has regularly approved. *See, e.g.*, *United States v. Barton*, 455 F.3d 649, 659 (6th Cir.

2006). The district court found an eighteen month sentence inadequate to punish Zaky's continued course of fraudulent conduct. The Memorandum Opinion emphasizes the repeated and long-term nature of Zaky's fraudulent scheme against the Mikhails. We conclude that it was reasonable for the district court to conclude that eighteen months was an inadequate sentence based on the record, § 3553(a)(1), and § 3553(a)(2)(A).

Furthermore, we conclude that it was reasonable for the district court to conclude that an eighteen month sentence would not provide adequate deterrence for Zaky's repeated fraudulent conduct. We also find that it was reasonable for the district court to conclude that a longer sentence was necessary to protect the public from further crimes committed by Zaky. Although the record is not crystal clear on this point, it appears that the district court found by a preponderance of the evidence that Zaky had committed a similar fraud on Rebecca Wahl and that the fact he had committed this similar fraud was evidence that he could present an ongoing danger to the public. Based on our review of the record, that certainly appears to be a reasonable conclusion and an appropriate consideration.

Finally, Appellant's counsel asserts that the district court "inexplicably" found that Zaky's physical and mental health would be well-served by a period of incarceration. Although conditions in our federal prisons may not be ideal, we find that it was reasonable for the district court to conclude that given the choice between government-funded medical care and the possibility that Zaky would have insufficient funds to pay for his own care (especially after restitution was ordered in this case), the former was preferable.

For the foregoing reasons, we AFFIRM.