**UNITED STATES of America, Plaintiff,**

v.

**Jimmy ORTIZ, aka Javier Lopez– Diaz, aka Flaco, Defendant.**

**No. 1:06–CR–417–004.**

United States District Court, N.D. Ohio, Eastern Division.

Aug. 14, 2007.

Ronald B. Bakeman, Office of the U.S. Attorney, Northern District of Ohio, Cleveland, OH, for Plaintiff.

Albert A. Giuliani, Cleveland, OH, for Defendant.

*SENTENCING MEMORANDUM*

DAN AARON POLSTER, District Judge.

## I. BACKGROUND

On August 29, 2006, the Government filed an indictment charging Defendant Jimmy Ortiz with two counts of conspiracy to possess with the intent to distribute heroin (Counts 1 and 4), a violation of 21 U.S.C. §§ 851, 846, 841(a)(1) and (b)(1)(B). The Government, in the same indictment, also charged Ortiz with one count of distribution of heroin (Count 3), in violation of 21 U.S.C. §§ 846, 841(a)(1) and (b)(1)(C), as well as one count of illegal re-entry (Count 7), in violation of 8 U.S.C. § 1326(b)(2). (ECF No. 9.) Ortiz requested a pre-plea Presentence Investigation Report ("PSR") on October 19, 2006, which I granted.

The United States Pretrial Services and Probation Department prepared the PSR on December 1, 2006, and revised the PSR on July 2, 2007. The Government filed a § 851 Information on October 17, 2006 providing notice that the Government sought an increase in the statutory mandatory minimum on Counts 1 and 4 from five years to ten years imprisonment, based on two prior drug trafficking felony convictions. (ECF No. 28.) The PSR identified the same two prior drug trafficking felony convictions, and therefore concluded that Ortiz qualified as a career offender under the advisory United States Sentencing Guidelines (the "Guidelines"), § 4B1.1. Ortiz did not object to the § 851 Information, and subsequently conceded the substance of the charges at the sentencing hearing. (See Sent. Hr'g Tr., 7:5–20.)

In a change of plea hearing initiated on June 20, 2007, and continued on June 21, 2007, Ortiz entered a plea of guilty to Counts 1, 3, 4 and 7 of the indictment. (See ECF Nos. 66, 68.) The plea agreement stated that the parties agreed to recommend a sentence within the range determined pursuant to the advisory Guidelines. (See Plea Agreement, ECF No. 69, 5.) In his sentencing memorandum filed before the sentencing hearing, Ortiz agreed that 262 to 327 months was the properly calculated advisory Guideline range for Ortiz as a career offender, and requested a sentence at the low end of the advisory range, 262 months. (See Def. Sent. Mem., ECF No. 74.)

On July 12, 2007, I sentenced Ortiz. I first explained the applicable statutory 120–months mandatory minimum sentence on Counts 1 and 4. Then, after I calculated the applicable advisory Guideline range, I informed both sides that I was considering a downward variance from the advisory Guideline range for career offenders, and asked if either side would like a continuance to prepare arguments accordingly. Counsel for the Government advised that he was prepared to address the possibility of a downward variance, and that no continuance was necessary despite the lack of previous notice from the Court. (See Sent. Hr'g Tr., 6–10.) Counsel subsequently acknowledged that a downward variance might be appropriate. (*Id.* at 9.) In response to a request from the Court, counsel for the Government then recommended a 200–month sentence (more than five years below the low end of the career offender advisory Guidelines range), a recommendation with which Ortiz's counsel concurred. (See *id.,* 12:9–11; 13:3–5.)

After hearing from the parties, I concluded that a 262–month sentence was greater than necessary to accomplish the statutory sentencing factors enumerated in 18 U.S.C. § 3553(a). I then sentenced Ortiz to, *inter alia,* a period of 168 months imprisonment on Counts 1, 3, and 4, to run concurrently, as well as a period of 120 months imprisonment on Count 7 to run

concurrently with the sentence for Counts 1, 3, and 4.

In this memorandum, I set forth a "thorough explanation" that "make[s] clear" the reasons for Ortiz's sentence. *See United States v. Liou,* 491 F.3d 334, 339 n. 4 (6th Cir.2007) ("[A] thorough explanation is the most reliable way for a district court to make clear its reasons supporting a given sentence."). *See also, United States v. Wilms,* 495 F.3d 277, 280 (6th Cir.2007) (explaining that "*Rita* exhorts the sentencing judge to satisfy the procedural requirements of 'set[ting] forth enough to satisfy the appellate court that he has considered the parties' arguments and has a reasoned basis for exercising his own legal decisionmaking authority.' ") (*citing Rita v. United States,* —— U.S. ——, 127 S.Ct. 2456, 2468, 168 L.Ed.2d 203 (2007)).

## II.  SENTENCING STANDARD

The Supreme Court "transformed the Sentencing Guidelines from a mandatory scheme into an advisory resource" in *United States v. Booker,* 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005). *Liou,* 491 F.3d at 337 (*quoting United States v. Richardson,* 437 F.3d 550, 553 (6th Cir. 2006)). In the post-*Booker* world, at least in the Sixth Circuit, the district court must consider the applicable advisory Guidelines range, as well as the other factors listed in 18 U.S.C. § 3553(a). *See id.* at 337; *United States v. Jones,* 489 F.3d 243, 250–251 (6th Cir.2007) (*quoting United States v. Ferguson,* 456 F.3d 660, 664 (6th Cir. 2006)). The § 3553(a) factors are as follows:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed—

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the advisory Guideline range;

(5) any pertinent policy statements issued by the Sentencing Commission;

(6) the need to avoid unwarranted sentence disparities

(7) the need to provide restitution to any victims of the offense.

See 18 U.S.C. § 3553(a).

Ultimately, the district court must follow the dictates of the so-called "parsimony provision" contained at the outset of § 3553(a). The provision mandates that the district court impose a sentence that is "sufficient, but not greater than necessary, to comply with the purposes" of § 3553(a)(2). *Id. See also, United States v. Foreman,* 436 F.3d 638, 644 n. 1 (6th Cir.2006) (explaining that the district court's job is not to impose a "reasonable" sentence, but to impose "a sentence sufficient, but not greater than necessary, to comply with the purposes" of section 3553(a)(2)). Thus, the district court's task is to "consider" the seven listed factors contained in § 3553(a), and then to employ that consideration in arriving at a sentence that is sufficient but not greater than necessary to accomplish the retributivist (just deserts/punishment) or utilitarian (promoting respect for the law/deterrence, protecting the community, rehabilitation) theoretical purposes of sentencing listed in § 3553(a)(2).

In other words, the parsimony provision is the "guidepost for sentencing decisions post-*Booker*," *United States v. Ferguson*, 456 F.3d 660, 667 (6th Cir.2006), yet the other applicable or pertinent § 3553(a) factors (i.e. the factors provided in §§ 3553(a)(1), (3)-(7) that are applicable to the specific case) are also a part of the sentencing court's analysis. Moreover, although the § 3553(a) factors must be "considered," the Sixth Circuit "has found that the 'district court need not explicitly reference each of the § 3553(a) factors in its sentencing determination.'" *United States v. Douglas*, Nos. 05–6397 & 05–6458, —— Fed.Appx. ——, ——–——, 2007 WL 1892084, 2007 U.S.App. LEXIS 16557, \*17–18 (6th Cir. June 29, 2007) (*quoting United States v. Jones*, 445 F.3d 865, 869 (6th Cir.2006); *also quoting United States v. Johnson*, 403 F.3d 813, 816 (6th Cir.2005) ("[T]his court has never required the 'ritual incantation' of the [§ 3553(a) ] factors to affirm a sentence.")).

The advisory Guidelines range, as one of the seven § 3553(a) factors, will always be considered. If, however, the Guidelines are to be truly "advisory" as the Supreme Court initially instructed in *Booker* and subsequently reaffirmed in *Rita*, then the properly calculated Guidelines range may be no more than one of several factors to consider when imposing a proper sentence pursuant to § 3553(a)'s parsimony provision. As explained by my fellow District Court Judge, the Honorable Lynn Adelman (E.D.Wis.), the Supreme Court's decision in *Rita* "assured district courts that the guidelines [sic] are truly advisory." *United States v. Santoya*, 493 F.Supp.2d 1075, 1078 (E.D.Wis.2007)[1] (citing *Rita*, 127 S.Ct. at 2474 (Stevens, J., concurring) ("I trust that those judges who have treated the Guidelines as virtually mandatory during the post-*Booker* interregnum will

now recognize that the Guidelines are truly advisory.")). *See also Rita*, 127 S.Ct. at 2465 (stating that "the sentencing court does not enjoy the benefit of a legal presumption that the Guidelines sentence should apply.").

The Sixth Circuit has reaffirmed the proposition that the Guidelines are "truly advisory." *See, e.g., Wilms*, 495 F.3d at 279. In *Wilms*, the district court calculated the applicable Guidelines range, and then required the defendant to overcome the presumption that a suggested sentence, within the Guidelines range, was the correct sentence. Although the district court eventually imposed a sentence *below* the applicable Guidelines range, the Sixth Circuit vacated the sentence and remanded for resentencing. Citing "the *Rita* Court's clear admonition that a district court may not apply a presumption that a defendant should be sentenced within the applicable Guidelines range," *Wilms*, 495 F.3d at 282, n. 1, the appellate court explained that applying such a presumption meant an impermissible return to the pre-*Booker* days of mandatory Guidelines. Instead, a sentencing judge must make "an *independent* determination of what sentence is sufficient, but not greater than necessary, to comply with the purposes of § 3553(a) ... taking into account the advisory Guideline range, the relevant § 3553(a) factors, and any other nonfrivolous arguments presented in support of a particular sentence." *Wilms*, 495 F.3d at 282 (emphasis in original).

Therefore, when one considers the Sixth Circuit's post-*Rita* line of decisions, along with the *Rita* opinion itself, it is clear that the district courts have tremendous sentencing discretion in the final determination of the sentence imposed. The sentencing courts are to consider the relevant

---

**1.** See Judge Adelman's Sentencing Memorandum in *Santoya* for a thorough and comprehensive analysis of *Rita's* implications for sentencing judges.

§ 3553(a) factors, the advisory Guideline range, and any other nonfrivolous arguments that each side may make, and indeed, may use the Guidelines as an advisory resource. Ultimately, however, the courts must impose a sentence in accord with § 3553(a)'s parsimony provision, and provide a reasoned explanation of the basis for the sentence.

The amount of reasoned explanation required varies, depending on the arguments presented and the sentence imposed. *See Liou,* 491 F.3d at 338 (*citing Rita,* 127 S.Ct. at 2468). For instance, "when a sentencing judge concurs with the Sentencing Commission's conclusion that a within-Guidelines sentence is appropriate for a given defendant, the explanation for the sentence generally need not be lengthy." *Id.* On the other hand, when either party presents nonfrivolous reasons for imposing a sentence other than the applicable advisory Guideline range, the sentencing judge "will normally go further and explain why he [or she] has rejected those arguments." *Id.* As the *Rita* Court explained, the sentencing judge must respond when "a party contests the Guidelines sentence generally under § 3553(a)— that is argues that the Guidelines reflect an unsound judgment, or, for example, that they do not generally treat certain defendants characteristics in the proper way—or argues for departure[.]" *Rita,* 127 S.Ct. at 2468. Notably, the district court need not explicitly recite and analyze each and every argument raised by the defendant in support of a lower sentence, so long as the district court sets forth enough explanation to make clear to the appellate courts the reasoning for the court's decision. *See Liou,* 491 F.3d at 339 n. 4 (citing *Rita,* 127 S.Ct. at 2468). With this framework in mind, I turn to the specifics of Ortiz's sentence.

## III. INITIAL CALCULATION OF ORTIZ'S SENTENCE

### A. Applicable Statutory Mandatory Minimum

Ortiz was charged with four Counts, two of which carry mandatory minimum sentences as ordered by statute. On each of Counts 1 and 4, Ortiz faced a mandatory sentence of no less than ten years, as the otherwise five-year mandatory minimum is doubled based on his prior felony convictions. Therefore I was bound by law to impose a sentence of at least ten years— 120 months—regardless of any other considerations, whether pursuant to the advisory Guidelines or § 3553(a).

### B. Calculation Under the Advisory Guidelines

I also properly calculated Ortiz's potential sentence under the advisory Guidelines. Pursuant to U.S.S.G. § 2D1.1, Ortiz would start at offense level 26, based on the nature and quantity of the heroin. The multiple-count adjustment provided in U.S.S.G. § 3D1.4 would move Ortiz to offense level 27. I found that Ortiz qualified for a three-level reduction based on acceptance of responsibility and a timely guilty plea, pursuant to U.S.S.G. §§ 3E1.1(a) and 3E1.1 (b), respectively. Therefore, the math would yield an offense level of 24. Based on the prior convictions contained in the PSR, I found that Ortiz had a total of 7 criminal history points, and thus he would fall within Criminal History Category III. Therefore the initial advisory Guidelines calculation, not including the career offender designation, produced a recommended range of 63 to 78 months.

The convictions on Ortiz's record, however, changed the calculus. A defendant may be designated a career offender under the Guidelines if (1) he was at least 18 years old at the time of the commission of the instant offense of conviction, (2) the

instant offense of conviction is a felony that is either a violent or controlled-substance offense, and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled-substance offense. U.S.S.G. § 4B1.1. Two of Ortiz's prior convictions were felony convictions involving controlled substance offenses. In the first, Ortiz, aged 21 years at the time, was charged with selling $20 worth of heroin to an undercover police officer within 1000 feet of a school in Portland, Oregon on November 29, 2001, a charge to which he pled guilty. In the second, Ortiz, then 22 years old, pled guilty in April of 2003 to committing the felony act of trafficking 28 grams or more of cocaine, but less than 200 grams of cocaine, in Charlotte, North Carolina. The parties did not dispute that U.S.S.G. § 4B1.1 was therefore implicated, classifying Ortiz as a career offender.

Under the career offender provision, Ortiz started at base offense level 37 (rather than 26, as initially calculated), and he was placed into Criminal History Category VI, despite only having seven criminal history points. The base offense level was then reduced by three levels for acceptance and a timely guilty plea, yielding a final offense level of 34, Criminal History Category VI. Accordingly, the advisory Guidelines range changed dramatically, from 63–78 months without the career offender classification, to 262–327 months with career offender status.

## IV. OTHER CONSIDERATIONS

As I was required by statute to impose a mandatory minimum sentence, the question then became how much more time, if any, than 120 months was sufficient, but not greater than necessary, to meet the statutory purposes of sentencing. To answer that question, I considered the pertinent § 3553(a) factors[2] and arguments from the parties as follows.

### A. Nature of the Offense

Ortiz was trafficking in heroin. By doing so, he was, bluntly, selling poison into the community. That poison destroyed the men and women who got hooked, and it destroyed the children of those addicts. Their lives are utterly destroyed by the heroin that Ortiz dealt. There is no disputing that selling heroin is a serious crime which merits a stiff prison sentence.

### B. Defendant's Character and Background

Ortiz had two previous felony drug trafficking convictions, one of which was for conspiracy to traffic in cocaine in North Carolina, the predicate offense for the § 851 enhancement. The other drug trafficking conviction involved selling heroin within 1000 feet of a school in Oregon. The Oregon conviction involved $20 worth of heroin, but is a "controlled substance offense" upon which the U.S.S.G. § 4B1.1 career offender enhancement was based. While Ortiz was classified as a career offender under the advisory Guidelines, I did not believe that the designation was fully warranted. I have seen many people with very lengthy prior criminal records who clearly warrant the designation of career offender (and the full consequences of that designation) in the full degree. Ortiz did not.[3]

I also considered that Ortiz was hooked on the very same poison that he was sell-

2. Some § 3553(a) factors, such as the need for restitution, were inapplicable to Ortiz's case.

3. As my fellow District Judge, Judge Nancy Gertner (D.Mass) put it, "There are, in short, career offenders and *career offenders*." *United States v. Ennis*, 468 F.Supp.2d 228, 235 (D.Mass.2006) (emphasis in original).

ing. I further considered Ortiz's argument that he was supporting his family in Mexico, but noted that he could have done other things besides sell drugs to support his family.

## C. Purposes of Sentencing

I found that substantial prison time was necessary to punish Ortiz for selling heroin, given the seriousness of the crime. Similarly, there was a need to protect the community from the poison that Ortiz sold, and it was clear to me that Ortiz's previous encounters with the law had not deterred him from peddling drugs.

## D. Kinds of Sentences Available

Pursuant to 21 U.S.C. §§ 851, 841(a)(1) and 841(b)(1)(B), Ortiz was subject to a statutory mandatory minimum sentence of ten years. Therefore his sentence could not have been less than 120 months imprisonment.

## E. The Advisory Guidelines

Ortiz's status as a career offender under U.S.S.G. § 4B1.1 produced an offense level of 34, with Criminal History Category VI. The advisory Guidelines accordingly called for a range of 262 to 327 months (roughly 23 years to 27–28 years) imprisonment without parole. This range was substantially higher—twelve years more at the bottom end, and approximately seventeen years more at the top end—than the 120 months (ten years) without parole that I was required to impose.

## F. The Need to Avoid Unwarranted Sentence Disparities

Of the four defendants named in the instant case, Ortiz was the only career offender. I sentenced one of his co-defendants to a mandatory minimum 120 months because of an enhancement. The other two co-defendants received 46 and 57 months, respectively. A sentence at least twelve years higher than the highest one given to a co-defendant, based on a $20 heroin sale, would have been disproportionate.

## G. Arguments by the Parties

At the sentencing hearing, the Government acknowledged that I could find—and that Ortiz could argue—that a sentence within the 262–327 months range was disproportionate to the sentences imposed on Ortiz's co-defendants. At the same time, the Government contended, his sentence should reflect his career offender status.

Ortiz conceded that he had prior offenses, but argued that the advisory Guidelines unfortunately treated him the same as if his $20 drug sale in Oregon was a substantially larger sale. The Government requested a 200–month sentence, a suggestion with which Ortiz concurred.

## V. THE PARSIMONY PROVISION AND DEFENDANT'S SENTENCE

After properly calculating the range recommended by the advisory Guidelines, and considering the other pertinent § 3553(a) factors and arguments made by the parties, I turned to the parsimony provision. While it was important to recognize Ortiz's status as a career offender in determining his sentence, it was also important not to impose a sentence that was disproportionate with that given to his co-defendants with similar records and conduct. A disproportionate sentence would have been greater than necessary in this case, and would have been excessively harsh considering the nature of the second drug offense. Even a sentence at the bottom of the recommended advisory Guidelines range would have been almost twelve years greater than the 120 months Ortiz's co-defendant received. The predicate offense for the tremendous difference would be a $20 heroin sale, and therein lies my

problem with automatically applying the advisory Guidelines range for the career offender enhancement: it is all or nothing. The "career offender" designation makes no differentiation between those with extensive criminal records (or those who are moving massive quantities of drugs) and a $20 drug transaction, yet the difference in reality is obvious.

What, then, to do? Offense level 26, Criminal History Category VI has the ten-year mandatory minimum in this case at the low end of the recommended range, which is 120 to 150 months. As detailed above, fully applying the career offender enhancement placed Ortiz at offense level 34, Criminal History Category VI. Using the parsimony provision as a guidepost, I determined that a sentence based on the advisory range for an offense level halfway between levels 26 and 34 was sufficient but not greater than necessary.[4] Offense level 30, Criminal History Category VI yields an advisory range of 168 to 210 months, and I found that a 168–month sentence was sufficient, but not greater than necessary, to meet the statutory purposes of sentencing. This was a stiff sentence, a substantial amount of time in prison, which was necessary for just punishment, deterrence, and protecting the community, as explained. Anything more, however, would have been greater than necessary, especially given the sentences for the co-defendants. If fourteen years in prison is not sufficient to punish Ortiz, to protect the community, and to deter future criminal conduct, I did not believe a few more years would do it.

### VI. CONCLUSION

Accordingly, I committed Ortiz to the custody of the Bureau of Prisons for 168 months on Counts 1, 3, and 4, to run

concurrently, with a 120–month period of imprisonment on Count 7, to run concurrently with the sentence for Counts 1, 3, and 4. I also ordered forfeiture of any interest Ortiz may have had to the $25,980 mentioned in the indictment, and imposed a mandatory $400 special assessment, due and payable immediately. I recommended that Ortiz participate in drug and alcohol treatment while in custody. I also ordered Ortiz, upon release from custody, to serve an eight year period of supervised release, with all the standard conditions applicable thereto. Finally, I added the special condition that Ortiz not reenter the United States without the express approval of the Attorney General or his designee.

---

**4.** I take the Sixth Circuit at its word that the Guidelines may be used as an "advisory resource." *See Liou,* 491 F.3d at 337 (*quoting United States v. Richardson,* 437 F.3d 550, 553 (6th Cir.2006)).