**NOT RECOMMENDED FOR FULL TEXT PUBLICATION**
File Name: 07a0610n.06
Filed: August 21, 2007
No. 06-6261

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

UNITED STATES OF AMERICA,
      *Plaintiff, Appellee*

                                                    On Appeal from the United States District
                                                    Court for the Middle District of Tennessee

            v.

JERRY RAY BROWN, SR.,
      *Defendant, Appellant*

_____/


**BEFORE: KENNEDY and COOK, Circuit Judges; and, ALDRICH, District Judge.***

**KENNEDY, Circuit Judge.** Jerry Ray Brown, Sr. (Brown Sr.) appeals his 24-month sentence for credit card fraud, claiming that the sentence, imposed by the district court after he pleaded guilty, is substantively unreasonable. The United States Sentencing Guidelines recommended range was 6-12 months. Brown Sr. argues that the district judge failed to cite compelling reasons for the departure from the Guidelines recommendation, and instead improperly relied on unreliable evidence and other impermissible factors. We **AFFIRM**.

**BACKGROUND**

In March of 2004, Jerrod Wade Brown (Brown Jr.), Brown Sr.'s son, informed the United States Secret Service (Secret Service) that his financial identity had been stolen by his father. Brown Sr. had used his son's social security number and date of birth to open five credit card accounts,

_____

*The Honorable Ann Aldrich, United States District Judge for the Northern District of Ohio, sitting by designation.

which carried a collective balance of over $17,000. Brown was indicted and pleaded guilty without a plea agreement.

The probation office prepared a pre-sentence report (PSR). The preparer of the report investigated Brown Sr.'s background and contacted his relatives. After this investigation, several of these relatives mailed letters to the district court. Letters from Karla Kay Burnett (Brown Sr.'s ex-wife) and Susie Smart (Brown Sr.'s estranged daughter) were described as victim impact statements and filed in the record. A letter from Joseph Koehler (Brown Sr.'s brother's stepson) was also filed in the record. These letters contained numerous allegations of past criminal, fraudulent, and other reprehensible conduct, allegations the district court described as "outrageous." Brown Jr. filed a victim impact statement making similar allegations. In addition, the probation office included many of the allegations in the PSR. Brown Sr. objected to all of the allegations of past conduct (both those of charged but dropped and those of uncharged conduct) as not supported by any competent or credible evidence.

Under the 2005 version of the Guidelines Manual, Brown Sr.'s recommended range, taking into account his offense level and his criminal history, was 6-12 months. Brown Sr.'s two earlier convictions did not increase his criminal history score because they were remote. In its pre-sentence memorandum and at the sentencing hearing, the government advocated an upwards departure to 24 months. The government argued that the Guidelines did not account for certain aspects of Brown Sr.'s crime and background; specifically, that the victim was his own son (indicating exceptional depravity) and that his history of criminal and fraudulent activity (both charged and uncharged) was inadequately reflected by the recommendation. The government relied partially on the letters from Brown Sr.'s relatives.

The sentencing hearing was continued several times. Two of the continuances occurred because Brown Sr. attempted to commit suicide using a combination of prescription and illicit drugs.

The district court adopted the government's recommendation in consideration of the sentencing factors found in 18 U.S.C. § 3553(a). "[W]hat [ ] Brown [Sr.] did is so much worse because it took place over the course of . . . almost three years" and because the victim was "his own son." Sentencing Tr., 27-28, Sept. 21, 2006 (citing 18 U.S.C. § 3553(a)(2)(A)); JA 97-98. In addition, in consideration of 18 U.S.C. § 3553(a)(2)(D), the court concluded that "Brown [Sr.] is in serious need of psychological counseling," in part because of two suicide attempts while he was awaiting sentencing. It determined that a 24-month term of imprisonment would allow him to get appropriate medical treatment. Sentencing Tr., 29, Sept. 21, 2006; JA 99. Although the court specifically stated that the letters were not sufficiently credible to consider their specific allegations, it noted that, "the very fact that [the] letters [were] written and to have one's own children begging the court to sentence [Brown Sr.] to as much time as the court possibly can, I have never had that before, and it says to me that there is some fire where there's smoke because that is truly unusual." Sentencing Tr., 32, Sept. 21, 2006; JA 102.

## ANALYSIS

This court reviews sentences for reasonableness. This review is bifurcated between procedural and substantive reasonableness. *See United States v. Davis*, 458 F.3d 491, 495 (6th Cir. 2006). Brown challenges only the substantive reasonableness of his sentence. Brown Br. at 11; RED at 11. Thus, we would be obliged to reverse the district court's sentence only if it had "select[ed] the sentence arbitrarily, bas[ed] the sentence on impermissible factors, fail[ed] to consider pertinent § 3553(a) factors, or g[ave] an unreasonable amount of weight to any pertinent

3

factor." *United States v. Webb*, 403 F.3d 373, 385 (6th Cir. 2005). Finally, while "sentences falling outside the Guidelines range are neither presumptively reasonable nor presumptively unreasonable," *United States v. Ferguson*, 456 F.3d 660, 665 (6th Cir. 2006), this court applies a proportionality review to sentences outside the Guidelines recommended range. The more the sentence deviates from the recommended range, the more compelling the district court's justification for the deviation must be. *United States v. Wells*, 473 F.3d 640, 644 (6th Cir. 2007).

Brown Sr. contends that the district court considered two inappropriate factors in determining his sentence. First, he argues that it was erroneous for the court to enhance the sentence because the victim of the crime was his own son. Second, he contends that the court's statement, "there is some fire where there's smoke" indicates that the court inappropriately took into account the letters written by his family members.[1]

## I. Nature of the Victim

The district court did not inappropriately enhance Brown Sr.'s sentence because the victim was his own son. Neither party cites any cases that hold the identity of the victim, in any sort of case, was an appropriate or inappropriate factor to consider. Brown Sr. points only to several newspaper articles indicating that identity theft is often perpetrated by members of one's own family to prove that this is not an exceptional case. His argument, however, is erroneous.

First, the Guidelines direct the district court to consider the "nature and circumstances" of the offense. 18 U.S.C. § 3553(a)(1). This direction gives the district court latitude to consider a

---

[1] Brown Sr. indicates a third error in his brief. He argues that the court took the letters into account not only to increase the his sentence based on past bad conduct, but also because of the present crime's impact on his non-victim family members. This memo considers these two factors together because it concludes that the district court did not inappropriately consider the letters for any purpose.

wide range of factors directly related to the offense itself. The relationship of the victim to the defendant – whether a close friend, a family member, or a complete stranger – is a salient circumstance of the offense and the district court acts within its discretion when it increases or decreases a sentence based on that relationship (so long, of course, as the court does not place "an unreasonable amount of weight" on that relationship, *Webb*, 403 F.3d at 385).

Second, committing a crime against a close family relation is, in many cases, a more heinous crime than if against a complete stranger. In *United States v. Ferguson* the district court applied a § 3B1.3 adjustment for abuse of a position of trust, which increased the offense level by two, and calculated the Guidelines recommended range accordingly. 456 F.3d 660, 664, 667 (6th Cir. 2006) (citing U.S.S.G. § 3B1.3). Nonetheless, the district court determined that that increase was insufficient, and it departed upwards from the recommended range to (in part) deter others from abusing similar positions of trust. This court affirmed. Analogously, family members, in the ordinary case, are in a position of trust vis-à-vis one another and are in better position to obtain personal information. They are also in a position to directly and closely observe the effect their crime has on the victim. An identity thief who steals personal information from an internet database will not, most likely, be in the same position to observe the deleterious effects of his crime as the thief who steals from his neighbor. This closeness is exacerbated in this case, where Brown Sr. continued the theft for almost three years; indeed, the district court explicitly took into account the length of time that Brown Sr. was aware of the harm his crime caused his son.

Finally, "[i]t has always been the case . . . that the appropriate penalty on a defendant can take into account the nature of the victims." *United States v. Cavera*, __ F.3d __, 2007 WL 1628799 (2nd Cir. June 6, 2007) (Calabresi, J., concurring dubitante). For example, the Guidelines recommend

5

an upward adjustment if the victim is a particularly vulnerable victim. U.S.S.G. § 3A1.1(b) & cmt. ("'[V]ulnerable victim' means a person . . . who is unusually vulnerable due to age, physical or mental condition, *or who is otherwise particularly susceptible to the criminal conduct*." (emphasis added)). While the district court did not apply a § 3A1.1(b) adjustment to Brown Sr.'s sentence, it is clear that the Guidelines contemplate the district court taking the nature of the victim into account.

Therefore, it was not error for the district court to consider that the victim of Brown Sr.'s crime was his own son.

## II. Consideration of the Family Members Letters

The district court did not inappropriately consider the letters sent by the members of Brown Sr.'s family. Brown Sr. argues that the letters were inappropriate. The district court, however, noted at the sentencing hearing that the allegations in the letters were insufficiently reliable and thus that it was not taking them into account. Brown Sr.'s, argument, therefore, centers on the statement made by the district court that, "there is some fire where there's some smoke." JA at 102. The full statement, however, specifically stated that the court was not considering those factors:

> The court also wants to note that . . . regardless of the truth of the allegations of the close family members . . . who make outrageous accusations against [ ] Brown [Sr.] – *and I'm not sentencing him for those accusations because I don't know if they are true or not* – but the very fact that someone has done enough to their family to cause letters of that sort to be written and to have one's own children begging the court to sentence this man to as much time as the court possibly can, I have never had that before, and it says to me that there is some fire where there's smoke because that is truly unusual.

JA at 102 (emphasis added). Therefore, the court specifically stated that it was not considering the factual allegations made in the letters, but only the level of animosity that Brown's crimes had generated among his family members. Indeed, it is questionable whether the court placed any weight on the letters or was merely expressing its belief (which it did not take into account) that Brown Sr.

6

had done some of the alleged acts. In addition, the district court made this statement at the end of the sentencing hearing, which was significantly after it imposed the sentence. In context, this statement was a last admonishment to Brown Sr. that he should attempt to repair his relationship with his family, rather than a factor the court considered in determining his sentence.

In addition, Brown Sr. concedes that it was appropriate for the district court to consider his son's victim impact statement. Brown Sr. Br. at 14, 17; *see also United States v. Blake*, 89 F. Supp. 2d 328, 347 (E.D.N.Y. 2000) ("While a victim's reactions are not controlling, they are something that a judge must and should consider before imposing a sentence."). Many of the allegations made in the other letters appear in Brown Jr.'s victim impact statement. Therefore, while the question is not properly presented, it is unclear whether the use of these additional statements would have been improper.

Furthermore, the district court provided compelling reasons for the sentence it imposed. It indicated that Brown Sr. needed medical treatment including psychological and drug counseling for his depression, suicidal tendencies, and drug problem. It indicated that the nature of the victim and the duration of the crime implicated three of the § 3553(a) factors; the seriousness of the offense and the need for a just punishment, the need to promote respect for the law, and the need to protect the public. It also indicated that the Guidelines did not adequately address the impact on the victim – damage to credit rating, etc. – in this case. Therefore, while the district court might not have been correct to consider the uncharged offense based on unreliable evidence, there is no clear indication that it did so, and it provided sufficient compelling reasons, supported by the pleaded conduct, to justify the sentence it imposed.

Defendant's sentence is clearly reasonable.

## CONCLUSION

For the foregoing reasons, Brown Sr.'s sentence is **AFFIRMED**.